[Crim. No. 3534.   Fourth Dist., Div. One.   Apr. 29, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. LORELIE
BROWN et al., Defendants and Appellants.

John W. Porter and Daniel B. MacLeod for Defendants and
Appellants.

Thomas C. Lynch, Attorney General, William E. James,
Assistant Attorney General, Elizabeth Miller and Robert F.
Katz, Deputy Attorneys General, for Plaintiff and Re-
spondent.

AULT, J. pro tem.*—In an indictment returned by the
Grand Jury of San Diego County, the defendants, Lorelie
Brown, Arthur Lane and Barry Leichtling were charged in
count I with transporting marijuana and in count II with

*Assigned by the Chairman of the Judicial Council.

possession of marijuana for sale. Before trial, defendants moved to suppress evidence under Penal Code, section 1538.5 and to set aside the indictment under Penal Code, section 995. These motions were denied. Later, each defendant withdrew his plea of not guilty to count I of the indictment (transporting marijuana) and entered a plea of guilty to the lesser included offense of possession of marijuana. Count II of the indictment was dismissed as to all defendants. Imposition of sentence was suspended, and each defendant was granted probation for a period of three years. They appeal from the order granting probation, and contend the search which disclosed the contraband resulting in their arrest and conviction was illegal and the motion to suppress evidence made under Penal Code, section 1538.5 was improperly denied.

Insofar as pertinent to this appeal, the facts and circumstances leading up to defendants' arrest are as follows:

On August 21, 1967, at approximately 11 p.m., the defendants were proceeding north on U.S. Highway 395, in an automobile owned and driven by defendant Lane. About five miles north of Escondido, the car was first observed by Deputies Embry and Peltier of the San Diego County Sheriff's Department. The car had a broken tail-light, in violation of Vehicle Code, section 25950. Because the road was narrow at this point, the deputies followed the car for about a mile, intending to stop it near an intersection where there was a wider pull-off area. During this interval, they noticed the car's tail-lights flicker, go completely out and then come on again. As they approached the intersection, Deputy Embry activated the red spotlight and the car ahead slowed down and began to pull to the right. Deputy Peltier turned the white spotlight on the interior of the slowing vehicle, and the officers saw the three defendants in the front seat of the car ahead of them. As the car slowed further and pulled further to the right, both deputies saw the driver lean forward, slightly to the right and down. The car continued to roll slowly to a stop about 100 yards beyond the point the deputies had intended to stop it.

Defendant Lane and Deputy Embry met at the rear of Lane's car. Embry obtained Lane's driver's license and gave it to Peltier who commenced running a name-check via the police car's radio. Meanwhile, Embry and Lane checked the car's tail-lights. In addition to the cracked lens, it developed that when the headlights of the car were on and the brakes depressed, the tail-lights went completely out. Embry asked Lane if there had been any riot problems in his neighborhood

or if he had had any difficulties with Negroes and questioned whether he carried firearms for his own protection. Lane answered these questions in the negative. Embry then asked Lane if he carried any weapons in the car and Lane replied that he did not. Embry asked Lane if he minded if he looked in the car in the area where he had been seated. Lane replied in words to the effect "Yes, go ahead. I will get the keys to the trunk for you." Embry said that this would not be necessary, proceeded to the passenger side of the car, asked the two other defendants to get out, and looked under the driver's portion of the front seat. He emerged from the car about 30 seconds later with a wax bag containing four marijuana cigarettes. Defendants were placed under arrest and a further search revealed more marijuana in a briefcase behind the front seat.

Approximately 5 to 10 minutes elapsed between the time the car was originally stopped and the arrest of the defendants. The officers did not receive a reply to the name-check on Lane until after the search and the arrest. The reply was negative.

Appellants concede, as they must, the original stopping of the car because of defective tail-lights was proper. ██ They contend their detention, after they had satisfactorily identified themselves, was illegal, and since the consent to search followed an illegal detention, the consent was invalid and should be disregarded.

While there are constitutionally imposed limitations upon the detention and investigation that police officers may make upon stopping a car for a minor traffic violation (*People* v. *Moray*, 222 Cal.App.2d 743 [35 Cal.Rptr. 432]), we believe these limitations were not exceeded here. It has been held where a car is stopped for a traffic violation, it is not unreasonable to detain the occupants for a short period of time for the purpose of determining whether there are outstanding traffic warrants against the driver or other information relating to him in police records. (*People* v. *Elliott,* 186 Cal.App. 2d 185, 189 [8 Cal.Rptr. 716]; *People* v. *Harris,* 212 Cal.App. 2d 845, 848 [28 Cal.Rptr. 458].) Here, the time between the original stopping of the car and the defendants' arrest was between 5 and 10 minutes. During that period, the brake and tail-lights were tested, defendant Lane's driver's license was checked, Officer Peltier obtained certain information necessary to the issuance of a traffic citation, and Lane's name was communicated via radio to the sheriff's department for a name-check.

Moreover, the stopping of the vehicle in which defendants were riding was not entirely routine. There were circumstances involved which have special significance and which affect the extent of permissible detention and investigation and the right of the officers to take reasonable steps for their own protection. First, the car was stopped in the nighttime in a rural area. Second, after becoming aware of the police vehicle and while bringing the car to a stop, the driver of the car made a movement forward, to the right and down, which was consistent with hiding something under the front seat. Third, the driver brought the car to a stop very slowly, and continued slowly for approximately 100 yards beyond the wider shoulder area of the highway where the officers intended it to stop. Lastly, Lane stepped out and met Embry at the rear of Lane's car.

We believe this combination of circumstances warranted more caution and more investigation than the routine issuance of a traffic citation (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52]).

In *People* v. *Henze,* 253 Cal.App.2d 986 [61 Cal.Rptr. 545], a case upon which defendants rely and which held a detention and search to be illegal, the court said, at page 989: "For example, if this incident had taken place during the hours of darkness, its timing alone would have provided a sufficient extra factor to justify temporary detention for investigation. The law in many instances draws a sharp distinction between the controls which may be exercised by peace officers during the nighttime and those to which they are limited during daylight hours, and most of the cases upholding temporary detention for investigation and questioning have arisen out of incidents which occurred at night. (*People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Martin,* 46 Cal.2d 106 [293 P.2d 52]; *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57].)"

Where a police officer, in the performance of his duty, stops a car for a traffic violation in a rural area at night, the scope and nature of the investigation that follows should not be governed solely by the minor nature of the Vehicle Code violation. When the circumstances surrounding the incident lead the officer to suspect a weapon may be available for use against him, his right of action to protect himself should not be unduly circumscribed. ██ Furtive conduct by the occupants of a car can, in and of itself, make a search and seizure

*without consent* reasonable. (*People* v. *Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57] ; *People* v. *Williams,* 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836] ; *People* v. *Sanson,* 156 Cal.App.2d 250, 251-252 [319 P.2d 422].)

Taking into consideration the time, the place, and what was observed by the officers, we think they were justified in detaining the defendants for a reasonable time to run a name-check on the driver and in requesting permission to search the vehicle. Since permission to search was granted,[1] defendants' rights would not be violated by the introduction of the contraband found in the search as evidence against them. The motion to suppress evidence was properly denied. (*People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852] ; *People* v. *Sullivan,* 214 Cal.App.2d 404, 408 [29 Cal.Rptr. 515].)

This case was apparently the first presented to the San Diego Superior Court after the adoption of Penal Code, section 1538.5. The trial court requested the district attorney to prepare written findings of fact and conclusions of law, which were signed and filed. Defendants urge error because the trial court failed to comply with the statutory requirements concerning findings of fact and conclusions of law in civil matters. A minute order, dated January 5, 1968, indicates the court denied the motion. The written findings of fact and conclusions of law signed and filed later were not necessary and may be treated as mere surplusage. They have in no way interfered with defendants' rights on appeal.

The orders granting defendants probation are affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied May 19, 1969, and the petition of appellants Brown and Lane for a hearing by the Supreme Court was denied June 25, 1969.

---

[1]The evidence on the question of consent is in sharp conflict and defendants vigorously urged in the trial court that no consent was in fact given to search the car. Commendably they do not take this position on appeal in the face of the fact that there is substantial evidence to support the trial court's finding of consent. Defendants' position on appeal is simply that the consent is invalid because it followed an illegal detention.