[Crim. No. 21752. Second Dist., Div. Two. Mar. 7, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDA ELAINE BREMMER, Defendant and Appellant.

## COUNSEL

Richard S. Buckley, Public Defender, James L. McCormick, Harold E. Shabo, Fred Manaster, Harry W. Brainard, Elinor Levinson and Richard A. Curtis, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, James H. Kline, Bernardine M. Baldwin, Frederick R. Millar, Jr., and Donald F. Roeschke, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

FLEMING, J.—After appellant's motion to suppress evidence had been denied, she was convicted of possession of a restricted dangerous drug (Health & Saf. Code, § 11910; Pen. Code, § 1538.5). She appeals the judgment of summary probation.

At 6:55 p.m. on 20 November 1971, appellant, in the company of another young woman, was stopped by Officer Tracy for a speeding violation and for driving with one headlight only. When asked for identification, she produced a driver's license. Then, as the officer testified: "A. When I received the driver's license from the young lady, I went back to the radio car and ran a warrant check, and while I was waiting for the warrant check, I issued a citation for speeding. Q. What was the result of the warrant check? A. I was advised by radio that there were no outstanding warrants; however, the subject had a prior arrest for sales of dangerous drugs and that she was on probation and that the stipulation of the probation was that she was open to search and seizure."

The officer returned to appellant's car, requested her to step out, and inquired if she had been previously arrested. She replied she had. He then asked if she were "open to search and seizure," and when she answered that so far as she knew she still was, he said he was going to search the vehicle and her handbag. Inside her handbag he found a change purse containing 114 white double-scored tablets, later identified as amphetamine sulphate (benzedrine). The search lasted no longer than five minutes.

Appellant challenges the reasonableness of the search, contending first, that the discovery of the evidence resulted from an unlawful detention and, second, that the search was unauthorized because it was unreasonable.

I

Appellant argues the dangerous drugs were discovered as a result of an unreasonably prolonged detention and therefore must be suppressed.

It is true a temporary detention constitutes a seizure of the person subject to the constraints of the Fourth Amendment. (*Terry* v. *Ohio,* 392 U.S. 1, 16 [20 L.Ed.2d 889, 902-903, 88 S.Ct. 1868].) "[J]ust as a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope [citation], so may an investigatory detention exceed constitutional bounds when extended beyond what is reasonably necessary under the circumstances which made its initiation permissible." (*Willett* v. *Superior Court,* 2 Cal.App.3d 555, 559 [83 Cal.Rptr. 22]; see also, *Pendergraft* v. *Superior Court,* 15 Cal.App.3d 237 [93 Cal.Rptr. 155]; *People* v. *Lingo,* 3 Cal.App.3d 661 [83 Cal.Rptr. 755].)

It is also true that ". . . where a car is stopped for a traffic violation, it is not unreasonable to detain the occupants for a short period of time for the purpose of determining whether there are outstanding traffic war-

rants against the driver or other information relating to him in police records. [Citations.]" (*People* v. *Brown,* 272 Cal.App.2d 448, 450 [77 Cal.Rptr. 438]; accord, *People* v. *Elliott,* 186 Cal.App.2d 185, 189 [8 Cal.Rptr. 716].)

We think the *Brown-Elliott* rule applies to the facts of this case. In contrast to *Willett* the detention at bench appears to have been brief and to have lasted no more than a few minutes. The sequence of events is not comparable to that in *People* v. *Lingo, supra,* 3 Cal.App.3d 661, where after the officers completed their activities relating to motor vehicle equipment and licensing violations, they initiated an inquiry into narcotic possession without any reason to do so.

 We conclude that under the circumstances of this case, the temporary detention was of appropriate duration and did not invalidate the seizure of evidence.

## II

The more difficult question is whether the search was authorized by law. The prosecution argues that a court order requiring a probationer to "submit his person and property to search and seizure at any time of the day or night by any law enforcement officer with or without a warrant" establishes a valid condition of probation which authorized the present search.[1] The defense argues that the search was invalid because it violated the reasonableness requirement of the Fourth Amendment.

In evaluating the merits of these divergent contentions we note certain considerations that form a framework for the problem.

(a) The policy requiring suppression of relevant evidence is designed to vindicate the law and discourage those charged with enforcement of the law from themselves violating the law. Suppression of evidence obtained as a result of an unlawful search and seizure by the police is designed to discourage the police from violating the law by prohibiting the use in court of illegally seized evidence and thereby make it unprofitable for the police to violate the law. This case, however, does not present any violation of law initiated by the police, for the police search took place in accordance with the terms of a court order.

(b) The present situation is analogous to that arising from a claim that a search warrant has been issued by a magistrate on less than probable

---

[1]The wording of the condition appears in printed forms used for recording judgments in Los Angeles and Orange Counties.

cause or an arrest warrant on less than reasonable cause. Our present concern is with judicial power rather than police power. It is, of course, a commonplace to observe that the Fourth Amendment applies to judicial power as well as police power, for a search and seizure pursuant to warrant is unreasonable when the warrant is not supported by probable cause and does not describe with particularity the place to be searched and the person or things to be seized. In this connection we note some resemblance between the proscribed general warrants of Revolutionary times and the general search order that has been made a condition of appellant's probation. Although the validity of such a general search order has been justified on the theory of waiver (*People* v. *Kern,* 264 Cal.App.2d 962, 964-965 [71 Cal.Rptr. 105]) the probationer who purportedly waives his rights by accepting such a condition has little genuine option to refuse, and the waiver cannot be said to be voluntary in any generally accepted sense of the term. (*Parrish* v. *Civil Service Commission,* 66 Cal.2d 260, 268-272 [57 Cal.Rptr. 623, 425 P.2d 223].) Advance waiver of constitutional rights is viewed critically by the courts (*People* v. *Vickers,* 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313]; *People* v. *Hernandez,* 229 Cal.App.2d 143, 148 [40 Cal.Rptr. 100]), and this viewpoint extends to advance waiver of the Fourth Amendment's requirement of reasonableness (*In re Martinez,* 1 Cal.3d 641, 647 [83 Cal.Rptr. 382, 463 P.2d 734]).

(c) Reasonableness under the Fourth Amendment, however, varies from place to place, time to time, and circumstance to circumstance. A condition of probation that subjects a convicted person to search and seizure at any time may serve a useful purpose by providing a workable alternative to imprisonment of the convicted person. Patently, the constitutional rights of a probationer—like the rights of those convicts who have been imprisoned—are circumscribed by the judgment of conviction and are not coterminous with those possessed by persons whose status remains unimpaired by conditions of probation imposed by court order. The probationer, like the parolee, has what is euphemistically known as a reduced expectation of privacy. (*People* v. *Mason,* 5 Cal.3d 759, 764 [97 Cal.Rptr. 302, 488 P.2d 630]; *In re Martinez, supra,* 1 Cal.3d 641, 647.) Yet a probationer is not without rights under the Fourth Amendment, even one whose rights have been radically restricted by court-imposed conditions of probation. (*In re Martinez, supra,* 1 Cal.3d 641, 647 ("Searches by parole officers . . . are subject to the broad reasonableness requirement of the Fourth Amendment.").)

(d) Unrestricted search of a probationer by any and all law enforcement officers at their whim and caprice is a form of harassment that amounts to an unreasonable search proscribed by the Fourth Amendment.

(*People* v. *Mason, supra,* 5 Cal.3d 759; *People* v. *Vickers, supra,* 8 Cal.3d 451.)

■ From these general propositions we conclude that the Fourth Amendment imposes limits on the search of a convict pursuant to a general search order, limits which are comprehended within the notion of reasonableness. A court order authorizing search necessarily implies conditions of reasonableness as to time, place, manner, and execution. Whether a particular search complies with the Fourth Amendment's requirement of reasonableness requires an evaluation of the facts and circumstances of the search under question. In delineating the limits of permissible search pursuant to a general search order our starting point is an analysis of the facts, holding, and opinion in *People* v. *Mason, supra,* 5 Cal.3d 759.

In that case burglars broke into a medical center and stole money, stamps, retail sales items, a radio, 4,000 hypodermic needles, and 30,000 pills and capsules, mostly barbiturates and amphetamines. At the time of the burglary a hospital employee observed suspicious activity by two men in the parking lot. Another employee noted the license number of their car and reported it to the police. The officers traced the car to defendant, who, they discovered, had registered as a narcotics offender and was on probation for the possession of marijuana. The officers noted that one of the conditions of defendant's probation required him to "submit his person, place of residence, vehicle, to search and seizure at any time of the day or night, with or without a search warrant, whenever requested to do so by the Probation Officer or any law enforcement officer."

The officers went to defendant's residence and saw his car parked in front. An officer knocked on the door of the house, identified himself, and announced he wanted to search the apartment. When defendant opened the door, the officer informed him he had reason to believe defendant had participated in a burglary and was subject to search and seizure by court order as a condition of probation. Defendant admitted he was subject to such a condition. Thereupon, the officers entered the house, searched, found a radio that resembled the one stolen from the medical center, arrested defendant, took him away, and in a subsequent search of defendant's car and house uncovered items of contraband. The Supreme Court upheld the legality of the search and vacated an order of dismissal based on the suppression of evidence.

Clearly, at the time the officers went to Mason's house they possessed probable cause to arrest him for burglary and theft and to search his person on arrest. Since probable cause for arrest and search of the person already existed, the general search order became relevant to the decision

only because the scope of the search exceeded that allowable on arrest (*Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]), in that it extended to Mason's car and house. To justify the extension the court relied on the authority of the general search order.

*Mason* thus stands for the proposition that a general search order may extend the scope of a personal search in connection with a probationer's arrest. It is not a holding that a general search order could have authorized a personal search of Mason in the first instance, for probable cause for arrest and personal search independently existed. The opinion suggests two problems in connection with the search of a probationer subject to general search order (1) justification for the search itself; and (2) the scope of a justifiable search. *Mason* enlightens us on the second point but not on the first. We therefore consider the element of reasonableness as it relates to justification for search of a probationer under a general search order.

■ We start with the hypothesis that reasonableness under the Fourth Amendment requires the search of a probationer pursuant to general search order to be related to the legitimate objectives the probation is designed to accomplish. But this abstract formulation gives off little warmth until kindled with the content of specific factual situations. We discern at least three situations where a reasonable relationship exists between exercise of a general authority to search and the legitimate objectives of conditions of probation.

1. *Search by a Probation Officer.* ■ Normally, a warrantless search of a probationer by, or at the direction of, his probation officer acting under the authority of a general search order imposed as a condition of probation is reasonable. The point of probation is to ensure the probationer's close supervision by an officer empowered to guide the probationer's reformation and rehabilitation and control his conduct during the probationary period. Absent obvious harassment a probation officer's search is directed toward the legitimate objective of probationer's reformation and rehabilitation and hence qualifies as reasonable under the Fourth Amendment.

2. *Search by a Peace Officer When the Probationer's Activities Suggest a Resumption of Misconduct.* Since a peace officer's primary concern lies with enforcement of the law and not with rehabilitation of a probationer, the officer's exercise of authority is ordinarily activated only by violations, or seeming violations, of public order and safety. ■ When a known probationer subject to warrantless search is discovered conducting himself in a manner that suggests a resumption of the misconduct that brought about the condition of probation, a peace officer may exercise the authority of a general search order to search. The officer's search is a search on

suspicion only, but a suspicion grounded on present activity as related to past performance. The reasonableness of the exercise of the authority of a general search order is determined by the circumstances of the particular case. For purposes of illustration we give a few examples of suggestive conduct:

a. A police officer sees a probationer convicted of the sale of narcotics and subject to general search order, standing on a street corner at night in a high crime area engaging in brief conversations with passersby. An investigation of the probationer's activities and a warrantless search of his person for narcotics is authorized.

b. A police officer sees a probationer convicted of pickpocketing and subject to general search order, moving slowly and circuitously through a crowded airport, racetrack, or football stadium. An investigation and warrantless search of his person for stolen items is proper.

c. A police officer sees a person sitting in a parked car in a warehouse district at midnight, and on investigation he learns by radio that this person is on probation for burglary and subject to a general search order. A warrantless search of the probationer and his vehicle is authorized.

In the foregoing instances sufficient relationship exists between the probationer's present activity and his past misconduct to make reasonable a search by a peace officer acting under the authority of a general search order.

3. *Intensification of Limited Search or Frisk.* ■ In instances where a limited search or frisk of a probationer by a peace officer is independently justifiable, the scope of the search or frisk may be extended by the authority of the general search order. For example, in *Mason* a warrantless search that would ordinarily have been limited to the arrestee's person and immediate vicinity was extended to include his house and vehicle under the authority of a general search order. Similarly, a justifiable frisk may expand into a complete search under the authority of a general search order.

Other situations may arise to give vitality to a general search order and make its exercise reasonable under given circumstances. Such a conclusion is implicit in the court's statement in *Mason* that tied its ruling to "the circumstances in the instant case." (Pp. 762-763.)

■ When we examine the circumstances of the case at bench with these legal considerations in mind, we find nothing in the record sufficient to trigger a peace officer's suspicion at the time of temporary detention that probationer might be trafficking in dangerous drugs or might other-

wise have lapsed into past misconduct. To the contrary, the facts at that time suggested no more than that probationer had committed two ordinary traffic violations. An ordinary traffic offender is susceptible to neither search nor frisk (*People* v. *Superior Court (Kiefer)* 3 Cal.3d 807, 815 [91 Cal. Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; *People* v. *Superior Court (Simon)* 7 Cal.3d 186, 206 [101 Cal.Rptr. 837, 496 P.2d 1205]), and nothing in the record removes this case from the ordinary. Since no suggestive conduct occurred at the time of temporary detention no occasion arose for the general search order to be put into effect. We conclude that the search was unreasonable under the Fourth Amendment, and that the evidence secured as a result of the search should have been suppressed.

The judgment is reversed.

**ROTH, P. J.**—I concur in all respects. *Mason,* read in the light of the facts upon which it is grounded, recognizes and implicitly compels a degree of reasonableness predicated upon time, place, and some facts and circumstances which independently raise at least slight suspicion.

It does not, in my opinion, authorize a gratuitous search, even of a probationer. If it does, any officer, at any place, may stop and search a known probationer, at any time of the day or night, and a probationer known to more than one officer conceivably could be stopped and searched a number of times on the same day.

**HERNDON, J.**—I dissent from the majority's holding that the search of a previously convicted dealer in dangerous drugs conducted by the police officer in this case was unauthorized and unreasonable. In my opinion, it is a plain and demonstrable fact that the majority opinion is in direct conflict with the recent and controlling decision of the Supreme Court in *People* v. *Mason,* 5 Cal.3d 759, 766 [97 Cal.Rptr. 302, 488 P.2d 630].

The truth that the majority opinion contradicts and refuses to follow the law as declared in *People* v. *Mason, supra,* is made manifest by the fact that in all substantial respects it appears to be nothing more than a paraphrased version of the dissenting opinion in *Mason* authored by Justice Peters. Five justices of the California Supreme Court rejected the views expressed in that dissent.

By way of example, the two dissenters in *Mason,* like the majority here, would permit searches of probationers in such cases as this only (1) by probation officers (cf. *Mason* dissent at pp. 768-769); or (2) by law enforcement officers with probable cause to arrest (cf. *Mason* dissent at p. 769).

In view of the great deference which the majority here pay to the dissenting opinion in *Mason,* it strikes me as remarkable that the vigorous language of the dissent concerning the intent and effect of the prevailing opinion is so completely ignored. Justice Peters indicated his interpretation of the prevailing opinion and his sharp disagreement with its holdings with such expressions as the following: "I cannot believe that such *a total denial* of Fourth Amendment rights is necessary or even desirable. . . ." (P. 768.) "I can see no justification, however, in subjecting the probationer *to any search by any law enforcement officer at any time."* (P. 769.) "The majority appear to assert that prior consent to search *by any law enforcement officer* is necessary to the discovery of future offenses. . . . I can see no justification for extending the waiver of all Fourth Amendment rights to *all law enforcement officers."* (P. 769.) "It is simply not necessary in any way to effective law enforcement, much less to effective probation supervision, that *all law enforcement officers.* be given the right *to search probationers or parolees at any time for any reason."* (P. 769.) (Italics added in part.)

In light of the foregoing statements concerning the effect of the prevailing opinion in *Mason* as interpreted by the dissenters, I am wholly at a loss to understand how it can be said that the law as now stated by the majority in the case at bench—adopting as completely as it does the reasoning and the conclusions of the *Mason* dissent—is consistent with the law as stated in the prevailing and controlling opinion of the Supreme Court.

I submit that no amount of sophistical argument can so effectively obscure the plain import of the decision as to raise the slightest doubt that it sustains the legality of the officer's search in this case and the correctness of the decisions of the magistrate and the trial judge whose statements indicate that they had studied the *Mason* decision and correctly understood its meaning.

I proceed upon the assumption that when five members of the Supreme Court of California signed the decision containing the following statement of the purpose and effect of the "consent to search" provision of the probation order here involved, they were well aware of the import of their language: "[T]he acknowledged purposes of such a provision [are] to deter further offenses by the probationer and to ascertain whether he is complying with the terms of his probation. 'With knowledge he may be subject to a search *by law enforcement officers at any time,* he will be less inclined to have narcotics or dangerous drugs in his possession. The purpose of an unexpected, *unprovoked* search of defendant is to ascertain whether he is

complying with the terms of probation; to determine not only whether he disobeys the law, but also whether he obeys the law. . . .'" (Italics added.) (*People* v. *Mason, supra,* 5 Cal.3d at p. 763.)

Certainly the majority opinion in *Mason* needs no support in the form of any concurrence. However, I am unable to resist the impulse to express my view that it is an exceedingly clear and well written opinion, fully supported by the authorities upon which it relies, entirely consistent with every dictate of reason and common sense, and well designed to protect and promote extremely vital interests of society.

Appellant in this case has been twice blessed in having both her cases tried by judges who were so lenient as to grant her probation despite the seriousness of her offenses—especially in this, the second case, in which the report of the probation officer discloses her very bad record and her unqualified admissions of guilt in both cases. The probation report discloses that in addition to her two narcotic offenses, she pled guilty in January of 1969 to a charge of "hit and run" in violation of Vehicle Code section 20002, subdivision (a), and in July of 1969 she was again convicted of a hit and run offense involving property damage. Obviously the justice of a substantial prison term would have been unassailable.

Officer Tracy evidently was an alert and well-informed police officer. It was after dark when he observed the appellant's car being driven at an excessive speed with only one headlight. It is conceded that the officer acted in strict conformity with his duty when he stopped and detained appellant and ran the warrant check.

When he was informed that appellant had been previously arrested and convicted of selling dangerous drugs and had been granted probation on the condition that she give her consent to being searched, Officer Tracy indicated his understanding of the law and his care in applying it when he asked appellant if she were "still open to search and seizure."

Appellant's affirmative answer to the officer's question was not only a reaffirmation of her consent to being searched, but it was also a clear indication that she herself entertained no such expectation of privacy as that with which the majority opinion would now so generously endow her. Appellant's conduct in submitting herself and her purse to search without protest is still further evidence of her consent and of her own common sense recognition that she was entitled to no such reasonable expectation of privacy as would give her immunity from search.

The law of the *Mason* decision sustaining the validity and effectiveness of the consent to search provision of an order granting probation applies

*a fortiori* to the case at bench. In *Mason,* the probation was granted to a defendant who had been convicted of possession of marijuana. In the case at bench, appellant was granted probation after her conviction of the more serious crime of *selling dangerous drugs.*

The majority opinion indulges in pages of sophistic argument in which various structures of straw are demolished and, with all the flourish of new discovery, it undertakes to fortify such unchallenged truisms as the proposition that "unrestricted search at the whim and caprice" of police officers is impermissible and that "reasonableness under the Fourth Amendment requires that the search of a probationer pursuant to general search order would be related to the legitimate objectives the probation is designed to accomplish."

Certainly I would not undertake to improve upon the language of Justice Burke above quoted which so clearly explains the "acknowledged purposes" of such a "consent to search" provision and which unqualifiedly declares the reasonableness of its employment without reference to the coexistence of other grounds of probable cause. I submit that it is self-evident that Officer Tracy did not act upon "whim or caprice" and that his search was directly related to the accomplishment of the objectives of probation as stated in *Mason* at page 763 above quoted.

A striking example of fallacy in the majority opinion appears in its assertion that "*Mason* enlightens us on the *scope* of a justifiable search but not on the *justification* for the search itself." This false dichotomy of the issues indicates careless reading of a decision which provides us with a great deal of *"enlightenment"* on the *"justification"* for a search of a probationer made pursuant to the "consent" provision of an order granting probation.

The *Mason* court *could* have reasoned that the evident existence of probable cause in that case justified the search and that the search could then be expanded in scope due to the probation condition, but it did *not* employ that process of reasoning. What the *Mason* court *did* say was that a warrantless search could be justified as incident to a valid arrest but that such a search was also justified by the individual's waiver of Fourth Amendment rights by way of an effective consent.

It is noteworthy that in *People* v. *Myers,* 6 Cal.3d 811 [100 Cal.Rptr. 612, 494 P.2d 684], the Supreme Court twice restates the teaching of *Mason* in terms of *waiver.* At page 819 of the *Myers* opinion, *Mason* is cited in support of the statement that "A proper waiver may consist of the knowing consent to Fourth Amendment infringements as a condition to

achieving a status otherwise affording greater personal freedoms." The same truth is made apparent by the parallel drawn in *Mason* by its reference to the waiver upheld in *Zap* v. *United States,* 328 U.S. 624 [90 L.Ed. 1477, 66 S.Ct. 1277].

After stating the truism with respect to the Fourth Amendment requirement of "reasonableness," the majority opinion observes that "this abstract formulation gives off little warmth until kindled with the content of specific factual situations." With this introduction, the opinion sets forth several hypothetical factual situations in which the requisite "reasonable relationship" would exist.

It would unduly extend this dissent if I were to discuss these hypothetical cases at any length but, by way of example, I quote only one of them: "c. A police officer sees a person sitting in a parked car in a warehouse district at midnight, and on investigation he learns by radio that this person is on probation for burglary and subject to a general search order. A warrantless search of the probationer and his vehicle is authorized."

Having in mind the dangers of deciding hypothetical cases as a form of prophetic prophylaxis to insure against the assumed dangers of police action based upon "whim and caprice," I would add the following example of permissible police conduct which happens to coincide with the facts of the case presently under review:

"A police officer sees a person driving a vehicle at night with improper lighting at an excessive rate of speed and learns by radio that this person is on probation by reason of his past involvement with dangerous drugs and is subject to a general search order. A warrantless search of the probationer and his vehicle is authorized."

The majority opinion finally posits the proposition that the test of reasonableness in such cases as this is whether or not the observations of the officer were "sufficient to trigger a peace officer's suspicion at the time of temporary detention that probationer might be trafficking in dangerous drugs or might otherwise have lapsed into past misconduct." In applying this test to the case at bench, the majority state that "the facts at that time suggested no more than that probationer had committed two ordinary traffic violations."

The gross factual inaccuracy of the last quoted statement is obvious. Quite apart from the fact that the majority's proposed test adds a requirement which contradicts the law of the *Mason* decision, the facts of the case at bench more than adequately *satisfy* the majority's added requirement.

When an officer observes a person driving an automobile in the nighttime at an excessive rate of speed and with only one headlight burning, and when the officer learns that this reckless driver has recently engaged in traffic in dangerous drugs, I submit that such officer would be grossly remiss in his duty if he failed to follow the procedure followed by Officer Tracy in this case.

The great frequency with which narcotic sellers are found to be narcotic users and the recidivistic tendencies of such users are matters of common knowledge. Universal also is the knowledge that persons who drive automobiles while under the influence of drugs are prone to drive recklessly and to constitute a deadly menace to the innocent users of our streets and highways. (See *People* v. *O'Neil,* 62 Cal.2d 748, 753 et seq. and fns. 9 and 10 [44 Cal.Rptr. 320, 401 P.2d 928, 17 A.L.R.3d 806].)

To characterize this appellant's two traffic violations as "ordinary" in a sense connoting triviality is worse than unrealistic; and to say that there was nothing more than these violations to "trigger" the officer's suspicion that appellant's reckless driving might have been related to the influence of narcotics is to ignore one of the most significant of the relevant facts.

In short, I would apply the law as stated in the prevailing opinion in *Mason* and affirm the judgment.

A petition for a rehearing was denied April 3, 1973, and respondent's petition for a hearing by the Supreme Court was denied May 3, 1973. Wright, C. J., McComb, J., and Burke, J., were of the opinion that the petition should be granted.