[No. B055868. Second Dist., Div. Six. Mar. 18, 1992.]

In re ANTHONY S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Appellant, v.
ANTHONY S., Defendant and Respondent.

**COUNSEL**

Michael D. Bradbury, District Attorney, and Michael D. Schwartz, Deputy District Attorney, for Plaintiff and Appellant.

Jonathan B. Steiner, under appointment by the Court of Appeal, for Defendant and Respondent

**OPINION**

YEGAN, J.—The People appeal following dismissal of a Welfare and Institutions Code section 602 petition after a motion to suppress evidence

was granted. (Welf. & Inst. Code, § 700.1.) The petition alleged that Anthony S. unlawfully possessed a videocassette recorder (VCR) with an altered identification number, a short-barreled rifle, and a pistol without a serial number. (Pen. Code, §§ 537e, subd. (a), 12020, subd. (a), 12094.) ▮ The People contend that a "consent search term" condition of juvenile probation, standing alone, provides a constitutionally reasonable basis for the search of Anthony's locked room. The California Supreme Court opinion in *People v. Bravo* (1987) 43 Cal.3d 600 [238 Cal.Rptr. 282, 738 P.2d 336] dictates that the People's contention is meritorious. We reverse.

Anthony was a member of the "Ventura Avenue Gangsters" gang and subject to a "consent search term" as a condition of an earlier declaration of wardship. The "consent search term" provided: "You shall submit to a search of your person, your residence, your vehicle or any personal or real property under your control, at any time, by a probation officer or any law enforcement officer with or without a search warrant, warrant of arrest or reasonable cause for: . . . stolen property/alcohol . . . gang graffiti, gang paraphernalia."[1]

The only officer who testified at the suppression hearing said that probation condition searches were to be conducted at the homes of several "Ventura Avenue Gangster" members. No evidence or suspicion of criminal activity or violation of probation by Anthony or any member of the "Ventura Avenue Gangsters" was presented at the suppression hearing.

About 3:15 p.m. on December 19, 1990, Ventura Police Officers Wilson, Moore and Roberts went to Anthony's parents' apartment. When asked what he was looking for at Anthony's home, Officer Wilson said: "We were looking for items listed on the terms of his probation; one being stolen property, alcohol, weapons . . . and gang paraphernalia . . . ."

Anthony's mother told the police that Anthony was at school and accompanied them to his locked bedroom door. She did not have a key to the door. Fire department personnel were summoned and assisted the police in forcing

---

[1]Being on probation with a "consent search term" is akin to sitting under the Sword of Damocles: " ' "With knowledge he may be subject to a search by law enforcement officers at any time, [the probationer] will be less inclined to have narcotics or dangerous drugs in his possession. The purpose of an unexpected, unprovoked search of defendant is to ascertain whether he is complying with the terms of probation; to determine not only whether he disobeys the law, but also whether he obeys the law. Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation." (*People v. Kern,* [*supra,*] 264 Cal.App.2d 962, 965.' " (*People v. Bravo, supra,* 43 Cal.3d at p. 610.)

entry. Handguns, a sawed-off rifle, nunchakus, ammunition, knives, marijuana and a pipe, beer, and a VCR were found inside the room.

The juvenile court granted the motion to suppress, finding that the officers needed to have "some suspicion or something brewing" to exercise the "consent search term." The court found that the search was not conducted to "harass" respondent because this was the only time the search term was utilized. However, the trial court expressly found that the search was "arbitrary," and thus expressly forbidden by the language on page 610 of *People v. Bravo, supra,* 43 Cal.3d 600.

In making this determination, the trial court said, "I think it was helpful to me to look up definition of arbitrary in Websters, and it's quoting, 'Depending on choice or discretion, selected at random without reason.' [¶] I think that's exactly what we've got here. I think this was a random search. The officers decided, let's go search the gang members today and you've got to have something else, just anything and something to indicate that there might be trouble brewing between this gang and that gang and they had suspicion. But you can't go out and search gang members because this would be a convenient day to search gang members. That's all I heard. [¶] You asked him three times to state a reason, and the only reason that I came up with was Officer Turner told him today was the day we were going to search gang members and that's what they did. Under Bravo you need more."

In *Bravo* the police searched the home of an adult probationer who had agreed to a "consent search term" after conviction of possessing concentrated cannabis. The police received an anonymous tip that Bravo was involved in the sale of narcotics but were unable to secure any corroboration. They executed the "consent search term" and found cocaine, firearms, and cash. Thus the search in *Bravo* was conducted with knowledge of the probation condition and for a legitimate law enforcement purpose.[2]

In *Bravo* the California Supreme Court sought to establish a "bright line" so that "[l]aw enforcement officers who rely on search conditions in probation orders, the probationer himself, and other judges who may be called

---

[2]While law enforcement efforts to obtain corroboration are to be lauded, corroboration is not required. Even under pre-*Bravo* law, a peace officer only had to have some information ". . . that suggests a resumption of the misconduct that brought about the condition of probation . . . ." (*People* v. *Bremmer* (1973) 30 Cal.App.3d 1058, 1065 [106 Cal.Rptr. 797].) The trial court's rationale is consistent with the *Bremmer* rule. However, *Bremmer* and similar Court of Appeal opinions were questioned in *Bravo, supra,* 45 Cal.3d at pages 607-608. Given the facts of *Bravo,* its rule was unnecessary if the *Bremmer* rule was a correct statement of law. There was no reason to question *Bremmer* if the Supreme Court did not intend to depart from it.

upon to determine the lawfulness of a search, . . . [can] determine the scope of the condition by reference to the probation order." (43 Cal.3d at p. 606.) The probationer's subjective understanding is not relevant and the test is an objective one. ■ "The search condition must . . . be interpreted on the basis of what a reasonable person would understand from the language of the condition itself . . . ." (*Id.*, at p. 607.) The *Bravo* court held ". . . that a search condition of probation that permits a search without a warrant also permits a search without 'reasonable cause.' . . ." (*Id.*, at p. 611.) A ". . . search condition *alone* justifies a warrantless search." (*Id.*, at p. 608, italics added.) There are exceptions: where the search exceeds the scope of the consent (*id.*, at p. 605), is conducted in an unreasonable manner (*id.*, at p. 607), is undertaken for harassment (*id.*, at pp. 607, 610) or is ". . . for arbitrary or capricious reasons." (*Id.*, at p. 610.) We here confront the meaning of the last exception.[3]

The context in which the *Bravo* court mentioned the later exception is as follows: In dicta, the *Bravo* court noted that a search by police officers based upon a "consent search term" could not be conducted ". . . for reasons unrelated to the rehabilitation and reformative purposes of probation or other legitimate law enforcement purposes. A waiver of Fourth Amendment rights as a condition of probation does not permit searches undertaken for harassment *or searches for arbitrary or capricious reasons.*" (43 Cal..3d at p. 610, italics added.)

The legal meaning of the word, "arbitrary," when considered in the context of the previous sentence of *Bravo, supra,* must relate to the executing officer's motivation. Where the motivation is unrelated to rehabilitative and reformative purposes or legitimate law enforcement purposes, the search is "arbitrary." For example, had the officer been motivated by personal animosity toward Anthony or his family, execution of the "consent search term" would be "arbitrary." ■ Here the evidence shows that the officers were motivated by a law enforcement purpose, i.e., to look for stolen property, alcohol, weapons, and gang paraphernalia at the homes of "Ventura Avenue GANGSTERS" members. This is a legitimate law enforcement purpose. Were we to adopt the trial court's definition of "arbitrary," the exception would swallow the rule and there would be a requirement of some cause in addition to the "consent search term." (See fn. 2.)

Anthony relies on *Griffin* v. *Wisconsin* (1987) 483 U.S. 868 (97 L.Ed.2d 709, 107 S.Ct. 3164) which was cited in *People* v. *Bravo, supra,* 43 Cal.3d at page 608, and the recent case of *U.S.* v. *Wryn* (9th Cir.1991) 952 F.2d 1122.

---

[3]Consistent with Black's Law Dictionary, we treat "arbitrary" and "capricious" as synonymous. (Black's Law Dict. (5th ed. 1979) p. 96, col 1.)

Neither compels the conclusion that there is a "cause" requirement in addition to the "consent to search" term. In fact, there was no "consent search term" at all in *Griffin* and the sole justification for the search was a statute.

The following excerpt from *United States* v. *Wryn, supra,* succinctly states the *Griffin* rule and its application to Montana jurisprudence: "Generally, a nonconsensual search violates the fourth amendment unless it is conducted pursuant to a validly issued warrant supported by probable cause. See, e.g., *Camara* v. *Municipal Court,* 387 U.S. 523, 528-29 . . . (1967). When a fourth amendment intrusion serves special government needs beyond those of normal law enforcement, however, a warrant may not be required. *National Treasury Employees Union* v. *Von Raab,* 489 U.S. 656, 665 . . . (1989). The Supreme Court has concluded that probation searches fall within this category. *Griffin* v. *Wisconsin,* 483 U.S. 868, 878 . . . (1987).

"In *Griffin,* the Supreme Court concluded that a warrantless probation search did not violate the fourth amendment because it was conducted pursuant to a Wisconsin law authorizing such searches when supervisory approval was first obtained and reasonable grounds existed to believe contraband would be found. The Court held that the need for flexibility within the probation system and the special relationship existing between a probationer and his probation officer justified departing from the usual warrant requirement. [438 U.S.] at 876 . . . . The Court specifically declined, however, to consider the state's argument that '*any* search of a probationer's home by a probation officer is lawful when there are "reasonable grounds" to believe contraband is present.' *Id.,* at 880 . . . (emphasis in original).

" '*Griffin* stands for the proposition that reasonableness for probationary searches may be established by statute, rather than by warrant.' *United States* v. *Schoenrock,* 868 F.2d 289, 292 (8th Cir. 1989). A number of other circuits have held that 'reasonableness' can also be established by narrowly tailored restrictions included within a probation agreement. *United States* v. *Giannetta,* 909 F.2d 571, 575 (1st Cir. 1990); *Schoenrock,* 868 F.2d at 292-93.

"In line with the foregoing cases, had the warrantless search of the probationer Wryn's home been authorized by either Montana state law or by Wryn's probation agreement we would consider the search 'reasonable' under the fourth amendment. But this is not the case. To the contrary, Montana Department of Institutions administrative rule 20.7.1101(7) and Wryn's probation agreement specifically require court approval for a probation officer's warrantless search of a probationer's residence without his consent. [Fn. omitted.] Here, such approval was lacking." (*United States* v. *Wryn, supra,* 952 F.2d at pp. 1123-1124.)

*Griffin* and *Wryn* are factually distinguishable and do not address the issue of whether a "consent search term," standing alone, provides a constitutional basis for a search. ■ " 'Cases are not authority for propositions not presented or considered. [Citation.]' " (*People* v. *Nealy* (1991) 228 Cal.App.3d 447, 452 [279 Cal.Rptr. 36]; see also *People* v. *Warburton* (1970) 7 Cal.App.3d 815, 822 [86 Cal.Rptr. 894]; *General Motors Accept. Corp.* v. *Kyle* (1960) 54 Cal.2d 101, 114 [4 Cal.Rptr. 496, 351 P.2d 768]; *Fricker* v. *Uddo & Taormina Co.* (1957) 48 Cal.2d 696, 701 [312 P.2d 1085].)

■ " 'A search to which an individual consents meets Fourth Amendment requirements . . . .' [Citation.]" (*People* v. *Mason* (1971) 5 Cal.3d 759, 765 [97 Cal.Rptr. 302, 488 P.2d 630]; see also *People* v. *James* (1977) 19 Cal.3d 99, 106 [137 Cal.Rptr. 447, 561 P.2d 1135].) The *Bravo* court determined that a search conducted pursuant to a valid consent, i.e., a waiver of Fourth Amendment rights as a condition of probation, is a waiver of whatever claim of privacy might otherwise exist. (*People* v. *Bravo, supra*, 43 Cal.3d at pp. 605, 607, 610.) This is a fair description of what happened in the instant case.

Probation is ". . . an alternative form of punishment . . . when it can be used as a correctional tool. [Citation]." (*People* v. *Edwards* (1976) 18 Cal.3d 796, 801 [135 Cal.Rptr. 411, 557 P.2d 995].) With the benefit of probation comes the burden of a "consent search term." Such a term serves as a correctional tool "in the often competitive enterprise of ferreting out crime. . . ." (*Johnson* v. *United States* (1948) 333 U.S. 10, 14 [92 L.Ed. 436, 440, 68 S.Ct. 367].)

Where, as here, the search is not for an arbitrary reason but is, instead for a legitimate law enforcement reason, a "consent search term," standing alone, provides a constitutional basis for a search.

The orders suppressing evidence and dismissing the petition are reversed.

Stone, (S. J.) P. J., and Gilbert, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 11, 1992. Mosk, J., and Kennard, J., of the opinion that the petition should be granted.