[No. B207979. Second Dist., Div. Five. Jan. 22, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
ROLANDO PALMER SARDINAS, Defendant and Appellant.

**COUNSEL**

Alex N. Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Paul M. Roadarmel, Jr., and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.—**

## INTRODUCTION

While on parole, defendant and appellant Rolando Palmer Sardinas (defendant) was stopped and searched by the same police officer who had searched him during a traffic stop the night before. During the second search, the officer discovered rock cocaine on defendant's person and arrested him. Prior to trial,

defendant moved under Penal Code section 1538.5[1] to suppress the drug evidence recovered by the officer during the second search, but the trial court denied the motion. Defendant was thereafter convicted of possession for sale of cocaine base.

On appeal, defendant challenges the trial court's ruling denying his motion to suppress, arguing that the parole search of defendant by the same officer who had searched him less than 24 hours earlier constituted harassment and violated defendant's right under the Fourth Amendment to be free from unreasonable searches and seizures. We hold that although searches of a parolee can be constitutionally unreasonable, substantial evidence supports the trial court's conclusion that the parole search of defendant was not conducted to harass or for any other arbitrary reason, but rather for a legitimate law enforcement purpose and was therefore constitutionally reasonable. We therefore affirm the judgment.

## FACTUAL BACKGROUND[2]

### A. *Prior Contacts with Defendant*

From the time City of Pomona Police Officer Todd Samuels first became a City of Pomona police officer five years prior to the search in question, he had seen defendant frequently, usually in an area where he observed defendant associating with cocaine base addicts. Once Officer Samuels joined the major crimes task force, he had more frequent contact with defendant because that task force dealt with "street level" narcotics and criminal street gangs.

Prior to the December 20, 2007, traffic stop, Officer Samuels had "contacted" defendant at least six or seven times, the last time being about 30 days prior to the traffic stop. Whenever he contacted defendant, Officer Samuels always confirmed that defendant was on parole.

### B. *The December 20 Search*

While on routine patrol on December 20, 2007—the night before the search in issue—Officer Samuels observed a van driving without any illuminated taillights. Officer Samuels made a traffic stop and observed that

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Because the sole issue on appeal involves the trial court's order denying defendant's motion to suppress under section 1538.5, the facts are taken from the testimony of the arresting officer at the hearing on that motion.

defendant was the driver of the van. Officer Samuels asked defendant to step out of the van and confirmed that defendant was still on parole. Defendant informed Officer Samuels that he had just purchased the van that day and had not had an opportunity to repair the taillights. Officer Samuels told defendant to repair the taillights, but did not issue a citation. Officer Samuels searched defendant, but did not find anything suspicious or illegal. Officer Samuel's partner searched the van, with similar results. Officer Samuels and his partner then drove defendant home in their patrol car and searched defendant's house but, again, did not find anything suspicious or illegal.

### C. *The December 21 Search*

On December 21, 2007, about 5:30 p.m., Officer Samuels observed defendant walking through the parking lot of a 7-Eleven convenience store. The area around the store was known for narcotics sales, particularly the apartment complex directly across the street from the store. Officer Samuels had made numerous contacts in that area relating to the sale, use, and possession of narcotics.

As Officer Samuels drove through the convenience store parking lot, he recognized defendant because of his prior contacts with him, including the traffic stop the night before. Officer Samuels knew defendant lived about three and a half to four miles from the store. Officer Samuels did not see defendant come from the apartments directly across the street from the store and did not see anything that made him suspicious of defendant. But, because Officer Samuels wanted to ensure that defendant was in compliance with his parole conditions, he stopped his patrol vehicle, exited, and approached defendant. Before Officer Samuels said anything, defendant said, "What's up, Samuels?" Officer Samuels asked defendant what he was doing in the area, and defendant replied that he was "just walking through." According to Officer Samuels, for his own safety and the safety of the public, he conducted a parole search of defendant. Officer Samuels found several pieces of individually packaged rock cocaine in defendant's front waistband.

## PROCEDURAL BACKGROUND

In an information, the Los Angeles County District Attorney charged defendant with possession for sale of cocaine base in violation of Health and Safety Code section 11351.5. The district attorney alleged that defendant had suffered a prior conviction of a serious or violent felony within the meaning of sections 1170.12, subdivisions (a) through (d) and 667, subdivisions (b)

through (i). The district attorney further alleged that defendant had suffered a prior conviction within the meaning of section 667.5, subdivision (b). The district attorney also alleged that defendant had suffered three prior convictions within the meaning of Health and Safety Code section 11370, subdivisions (a) and (c), which allegation, if true, would make defendant ineligible for probation or a suspended sentence.

Defendant pleaded not guilty and denied the special allegations. Prior to trial, defendant filed a motion pursuant to section 1538.5 to suppress the drug evidence recovered during the December 21, 2007, parole search. After hearing argument, the trial court denied the motion, concluding that the search was not arbitrary, capricious, or whimsical and was not motivated by any animus toward defendant.

Following trial, the jury found defendant guilty as charged. Defendant waived his right to a jury trial on the prior allegations, and the trial court found true three of the four prior convictions. The trial court imposed a seven-year sentence comprised of the low term of three years, doubled to six years pursuant to sections 1170.12, subdivisions (a) through (d) and 667, subdivisions (b) through (i), plus one year pursuant to section 667.5, subdivision (b).

## DISCUSSION

### A. *Standard of Review*

Defendant's challenge to the trial court's ruling denying his motion to suppress presents a mixed question of law and fact that is subject to a two-tier standard of review. "The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596–597 [174 Cal.Rptr. 867, 629 P.2d 961]; *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)" (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].) "A ruling on a motion to suppress generally implies 'a finding of fact favorable to the prevailing party on each ground or theory underlying the motion.' (*People v. Manning* (1973) 33 Cal.App.3d 586, 601–602 [109 Cal.Rptr. 531].)" (*People v. Solorzano* (2007) 153 Cal.App.4th 1026, 1031 [63 Cal.Rptr.3d 659].) Applying this two-tiered

standard to the instant case, we review the trial court's factual findings concerning the purpose for and motive behind the parole search under the substantial evidence test. Then we determine de novo the legal issue of whether the search was arbitrary, capricious, or harassing, and thus unreasonable and unconstitutional. (*People v. Reyes* (1998) 19 Cal.4th 743 [80 Cal.Rptr.2d 734, 968 P.2d 445] (*Reyes*); see also *People v. Ayala* (2000) 24 Cal.4th 243, 279 [99 Cal.Rptr.2d 532, 6 P.3d 193]; *People v. Ramos* (2004) 34 Cal.4th 494, 505 [21 Cal.Rptr.3d 575, 101 P.3d 478].)

## B. *Constitutionality of the December 21 Parole Search*

It is undisputed that defendant was on parole at the time of the December 21, 2007, search, and was therefore subject to a valid search condition.[3] It is also undisputed that Officer Samuels was aware of defendant's parole status at the time of the search in question.[4] Nevertheless, defendant argues that the search violated his Fourth Amendment right to be free from unreasonable searches and seizures because the officer's prior contacts with defendant, including his search of defendant's person, van, and home less than 24 hours prior to the search in question, compel the conclusion that the December 21 search was conducted for purposes of harassment.

In *Reyes, supra,* 19 Cal.4th 743, the Supreme Court reviewed certain of its past decisions setting limitations on the rights of parolees and probationers under the Fourth Amendment, at least two of which decisions appeared to be in conflict. The court observed, "In *People v. Burgener* (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, 714 P.2d 1251] (hereafter *Burgener*), this court held a parolee subject to a search condition still retains a reasonable, though somewhat diminished, expectation of privacy under the Fourth Amendment. Thus, a warrantless search of his person or property must be justified by at least a reasonable suspicion 'that the parolee has violated the law or another condition of his parole, or is planning to do so.' (41 Cal.3d at p. 533,

---

[3] Section 3067, subdivision (a) provides: "Any inmate who is eligible for release on parole pursuant to this chapter shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." There was no contention that defendant did not sign such an agreement.

[4] In *People v. Sanders* (2003) 31 Cal.4th 318, 333 [2 Cal.Rptr.3d 630, 73 P.3d 496], the Supreme Court held that when officers conduct a warrantless search while unaware of a parole search condition, the condition cannot be relied upon as justification for the search. That is not the case here, as Officer Samuels was aware that defendant was on parole and therefore subject to a search condition at the time of the December 21 search.

fn. omitted.) Subsequently, in *In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519] (hereafter *Tyrell J.*), we upheld the warrantless search of a juvenile probationer, subject to a search condition, because he did not have 'a *reasonable* expectation of privacy over his . . . person or property' (*id.* at p. 86) that society is 'willing to recognize as legitimate.' (*Id.* at p. 89.)" (*Reyes, supra,* 19 Cal.4th at p. 746.)

■ Recognizing the conflict between the holdings in *People v. Burgener, supra,* 41 Cal.3d 505, and *In re Tyrell J., supra,* 8 Cal.4th 68, the court in *Reyes, supra,* 19 Cal.4th 743, resolved the issue by extending the rationale of *Tyrell J.* to adult parolees. "The rationale of *Tyrell J.* can be stated succinctly. When involuntary search conditions are properly imposed, reasonable suspicion is no longer a prerequisite to conducting a search of the subject's person or property. Such a search is reasonable within the meaning of the Fourth Amendment as long as it is not arbitrary, capricious or harassing. *Tyrell J.*'s reasoning applies with equal force to adults. In both cases the expectation of privacy is already reduced by the absence of the warrant requirement. As a convicted felon still subject to the Department of Corrections, a parolee has conditional freedom—granted for the specific purpose of monitoring his transition from inmate to free citizen. The state has a duty not only to assess the efficacy of its rehabilitative efforts but to protect the public, and the importance of the latter interest justifies the imposition of a warrantless search condition." (*Reyes, supra,* 19 Cal.4th at p. 752.) The court in *Reyes* concluded that "[w]here the search is for a proper purpose, we hold that, even in the absence of particularized suspicion, a search conducted under the auspices of a properly imposed parole search condition does not intrude on any expectation of privacy 'society is "prepared to recognize as legitimate." ' ([*New Jersey v.*] *T.L.O.* [(1985)] 469 U.S. [325,] 338 [83 L.Ed.2d 720, 105 S.Ct. 733, 741]; *Hudson* v. *Palmer* [(1984)] 468 U.S. [517,] 526 [82 L.Ed.2d 393, 104 S.Ct. 3194, 3200].)" (*Reyes, supra,* 19 Cal.4th at p. 754.)

The court in *Reyes, supra,* 19 Cal.4th 743, recognized that a parolee subject to a warrantless search condition retained at least some measure of protection under the Fourth Amendment. "However, our holding that particularized suspicion is not required in order to conduct a search based on a properly imposed search condition does not mean parolees have no protection. As explained in *People* v. *Clower* (1993) 16 Cal.App.4th 1737 [21 Cal.Rptr. 2d 38], 'a parole search could become constitutionally "unreasonable" if made too often, or at an unreasonable hour, or if unreasonably prolonged or for other reasons establishing arbitrary or oppressive conduct by

the searching officer.' (*Id.* at p. 1741; *United States* v. *Follette* (S.D.N.Y. 1968) 282 F.Supp. 10, 13; see *In re Anthony S.* (1992) 4 Cal.App.4th 1000, 1004 [6 Cal.Rptr.2d 214] [a search is arbitrary and capricious when the motivation for the search is unrelated to rehabilitative, reformative or legitimate law enforcement purposes, or when the search is motivated by personal animosity toward the parolee]; *People* v. *Bremmer* (1973) 30 Cal.App.3d 1058, 1062 [106 Cal.Rptr. 797] [unrestricted search of a probationer or parolee by law enforcement officers at their whim or caprice is a form of harassment].)" (*Reyes, supra,* 19 Cal.4th at pp. 753–754.)

■ " 'A waiver of Fourth Amendment rights as a condition of probation does not permit searches undertaken for harassment *or searches for arbitrary or capricious reasons.'* ([*People v. Bravo* (1987)] 43 Cal.3d. [600,] 610 [238 Cal.Rptr. 282, 738 P.2d 336], italics added.) [¶] The legal meaning of the word, 'arbitrary,' when considered in the context of the previous sentence of *Bravo, supra,* [43 Cal.3d at page 610,] must relate to the executing officer's motivation. Where the motivation is unrelated to rehabilitative and reformative purposes or legitimate law enforcement purposes, the search is 'arbitrary.' For example, had the officer been motivated by personal animosity toward [the probationer] or his family, execution of the 'consent search term' would be 'arbitrary.' " (*In re Anthony S., supra,* 4 Cal.App.4th at p. 1004.)

In this case, the trial court heard the testimony of Officer Samuels at the hearing on defendant's motion to suppress and concluded that the December 21 search in the convenience store parking lot was conducted for a legitimate law enforcement purpose and not to harass. There is substantial evidence in the record to support that conclusion. The search in question was conducted directly across the street from an apartment complex known to Officer Samuels as a location where drug trafficking occurred. Officer Samuels also knew defendant was on parole for a drug possession conviction and had observed defendant associating with known drug addicts in the past. According to the trial court, there was no evidence that Officer Samuels harbored any animus toward defendant, and there was evidence that part of Officer Samuels's job was to know the identities of parolees in the city and to patrol areas known for drug trafficking. Therefore, the evidence presented at the hearing on the motion to suppress supported a reasonable inference that Officer Samuels was acting with a legitimate law enforcement purpose when he searched defendant on December 21.

Defendant focuses on the traffic stop the night before the search in question, the ensuing searches of defendant's person, van, and house, and the

results of those searches that produced nothing illegal or suspicious. According to defendant, based on those searches, there was no legitimate reason to stop and search defendant less than 24 hours later as he walked through a convenience store parking lot. The gist of defendant's argument is that the temporal proximity between the December 20 and 21 searches, when combined with Officer Samuels's prior six or seven contacts with defendant, belies any legitimate purpose for the search on December 21 and compels the conclusion that the search was harassing. We disagree.

Although Officer Samuels admitted that he had six or seven prior contacts with defendant prior to the December 20 traffic stop, there is no evidence in the record concerning the details of those contacts or whether one or more of them involved a search of defendant. Moreover, there is no evidence as to the timing of those contacts, which occurred over the five year period that Officer Samuels was employed as a City of Pomona police officer. From the record, it cannot be determined whether those prior contacts occurred close in time to one another or sporadically over a five-year period. Thus, absent more information about those six or seven contacts, they do not, as defendant suggests, require a conclusion that Officer Samuels harassed defendant.

Moreover, the December 20 search occurred at least a month after Officer Samuels's last contact with defendant and was the result of a legitimate traffic stop for a Vehicle Code violation. Officer Samuels did not know defendant was driving the van when he made the traffic stop, and he verified defendant's parole status before searching him.

■ There was no evidence that Officer Samuels was following defendant or searching specifically for him on either December 20 or 21. To the contrary, on both occasions Officer Samuels was on routine patrol performing his duties as a member of the major crimes task force, which duties included knowing and making routine contact with parolees in his jurisdiction. Based on the evidence presented, it was reasonable for the trial court to infer that the two searches within 24 hours were conducted for legitimate law enforcement purposes. The facts found by the trial court concerning Officer Samuels's knowledge and motives and the circumstances surrounding the two searches are supported by substantial evidence. That being so, the December 21 search was not arbitrary or capricious, but rather was conducted for a legitimate law enforcement purpose. No constitutional violation occurred, and the trial court properly denied defendant's motion to suppress.

## DISPOSITION

The judgment of the trial court is affirmed.

Armstrong, Acting P. J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 22, 2009, S170824. Corrigan, J., did not participate therein.