Filed 11/6/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADAM SERGIO RODRIGUEZ,<br><br>    Defendant and Appellant. | H038588<br>(Santa Clara County<br> Super. Ct. No. C1110340) |

Defendant Adam Sergio Rodriguez was convicted after a court trial of possession of child pornography (Pen. Code, § 311.11, subd. (a)).[1] The trial court suspended imposition of sentence and placed him on three years felony probation. On appeal, he argues that he was prejudiced because his relitigated motion to suppress was not heard by the judge who granted his earlier motion to suppress in violation of section 1538.5, subdivision (p). In the alternative, he contends his motion to suppress was erroneously denied and two of his probation conditions are unconstitutionally vague.

We conclude the trial court did not abuse its discretion when it declined to assign the motion to suppress to the judge who granted defendant's motion to suppress in the first case. Additionally, we determine the motion to suppress was properly denied. However, we agree with defendant that two of his probation conditions require modification. We modify the probation conditions and affirm the judgment.

---

[1] Further unspecified statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Crime*

In November 2009, San Jose Police Officer Russell Chubon began investigating a tip that an individual with the username "Damon Secloro" was making comments in an America Online chat group about having sex with teenage girls. Chubon served a search warrant on America Online to identify the user's internet protocol (IP) address, and the account holder was identified as Susanna Rodriguez (defendant's mother) with an address in San Jose.

*The January 28, 2010 Investigation and Search*

On January 28, 2010, Chubon and his partner, Kendra Nunes, went to the residence associated with the IP address. Chubon wore a concealed digital recorder and taped the visit. After conversing with the officers, defendant eventually surrendered his computer. The officers scanned the computer and found images of underage children in sexually explicit poses. On February 2, 2010, Chubon returned to the home with a search warrant. Defendant waived his rights and acknowledged he had child pornography on his computer, including approximately "a dozen photos and a dozen videos." Defendant denied trading images with other individuals and said he had obtained the material through Web sites.

*The First Case*

On February 24, 2010, the district attorney filed a felony complaint charging defendant with possession of child pornography in violation of section 311.11, subdivision (a) and a count of possession of marijuana in violation of Health and Safety Code section 11357, subdivision (c). Judge Diane Northway conducted a preliminary hearing on the matter on September 23 and 24, 2010. Judge Northway also heard and denied defendant's motion to suppress. Defendant was held to answer on both charges.

*The Renewed Motion to Suppress and Judge Chiarello's Decision*

On January 3, 2011, defendant filed a renewed motion to suppress under section 1538.5, subdivision (i). Defendant argued the search and seizure of his computer was invalid because the officers entered his home without a search warrant, his consent to the officers to take his computer was the direct result of the unlawful entry, and his consent was involuntary.

The motion was assigned to Judge Vincent Chiarello, who reviewed the transcript of the preliminary hearing and the taped encounter between the officers and Susanna Rodriguez, John Rodriguez (defendant's father), and defendant.[2] Judge Chiarello summarized the pertinent facts as follows:

Susanna was the first to come to the door and speak with the detectives when they arrived at the house. She told the detectives several times during their conversation she wished to talk with her husband, John. At some point, Detective Nunes said to Susanna: "Here is the reality. We could go get a search warrant and come, you know, kick the door in and do it that way." Susanna told the officers to give her a few moments, and she retreated back into the house after closing the door. Several minutes later, defendant came to the door and began speaking with the detectives. Nunes told defendant that "if we're reaching a dead-end at this point, and then we have to start considering things like a search warrant and all that, which I think is unnecessary based on all we know."

Chubon asked if he and Nunes could go inside the house. John expressly told the officers to stay outside. The officers continued to talk to John, Susanna, defendant, and defendant's brother. Defendant told the detectives to remain outside, and Chubon asserted he was concerned defendant could return with a gun. At some point, Chubon followed defendant into the house. Nunes followed Chubon inside. John and the officers

---

[2] Since several of the individuals involved in this case share the same surname, we will refer to them by their first name for clarity. No disrespect is intended.

3

had a conversation about their presence in the home.  Nunes then asked Chubon if she should call "Steve Fein and see if we have enough for a search warrant."  Chubon told Nunes to go ahead with the call, but John interjected and said it was not necessary.  Later, defendant unplugged his computer and gave it to the detectives.

Based on this evidence, Judge Chiarello concluded the interaction between the officers and the family had been "tainted at the outset by the statement that the officers could go get a search warrant and come kick the door in and do it that way."  Judge Chiarello asserted the People had failed to prove that defendant's consent to the search was free and voluntary, because his consent was the result of coercion or duress.  Judge Chiarello distinguished the case from *People v. McClure* (1974) 39 Cal.App.3d 64.  In *McClure*, the court concluded a statement that officers could pursue a search warrant "did not serve to vitiate appellant's consent to search, since this statement threatened nothing more than what the officers had a legal right to do." (*Id*. at p. 69.)  Judge Chiarello remarked that unlike the *McClure* case, here "the officers at the outset explicitly threatened to come back and kick the door in, which they most certainly did not have the right to do with a search warrant, unless, as [the district attorney] pointed out, there were certain circumstances later on that justified that."

Judge Chiarello granted the motion to suppress on May 2, 2011, and the case against defendant was dismissed.

*The Second Case*

The district attorney refiled a complaint against defendant on July 1, 2011, alleging the same counts as in the first case.  Defendant filed a notice he was renewing his motion to suppress under section 1538.5, subdivisions (f), (j), and (p).  Defendant also moved to have the suppression motion heard by Judge Chiarello (§ 1538.5, subd. (p)), which the People opposed.  Presiding Judge Jerome Nadler denied defendant's motion to have the suppression hearing before Judge Chiarello, asserting that "departments make

4

themselves available when they're available to me, with the exception of Department 54, who's Judge Del Pozzo, who's assigned full time to my division, or to take [p]reliminary [e]xamination matters. Everyone else volunteers for that assignment on an availability basis. [¶] So I'm not sure who's going to be available on October 27 at 8:32 when this matter is set for [p]reliminary examination and now [section] 1538.5. [¶] It will just have to go out to whatever Judge is available on that date."

The preliminary hearing and motion to suppress was assigned to Judge Vanessa Zecher. Defendant opposed the assignment to Judge Zecher, arguing again that Judge Chiarello should hear the renewed motion to suppress under section 1538.5, subdivision (p). Judge Zecher sent the parties back to Judge Nadler. Before Judge Nadler, the district attorney argued that Judge Northway heard the first motion to suppress and denied it and opined if the case were to be reassigned, it should be reassigned to Judge Northway, not Judge Chiarello. After considering the parties' arguments, Judge Nadler asserted that "Judge Chiarello has a sentencing calendar today in Palo Alto and, therefore, [is] not available for this prelim. [¶] This matter is reassigned to Judge Zecher for prelim right now."

*The Suppression Hearing Before Judge Zecher*

Judge Zecher heard the motion to suppress on December 8, 2011. Detective Chubon, Susanna, John, and defendant testified during the hearing. Defendant again argued his consent had not been voluntary. After considering the testimony and evidence submitted by the parties, Judge Zecher denied the motion to suppress and ordered defendant be held for arraignment.

*The Renewed Motion to Suppress*

Defendant filed a renewed motion to suppress pursuant to section 1538.5, subdivision (i), on February 8, 2012, seeking review of Judge Zecher's denial of the motion to suppress. Defendant again insisted Judge Chiarello should have heard his

5

relitigated motion to suppress. The People conceded the motion should have been heard by Judge Chiarello, not Judge Zecher. Defendant withdrew his motion after the trial court concluded a renewed motion to suppress under section 1538.5, subdivision (i) was not a proper vehicle for defendant's argument that Judge Zecher should not have heard the relitigated motion to suppress.

On March 6, 2012, defendant moved to set aside the information (§ 995). During the hearing on his section 995 motion, defendant argued because his motion to suppress was heard by Judge Zecher, not Judge Chiarello, he had been deprived of a substantial right; therefore, the information should be set aside. The People asserted the right to the same judge under section 1538.5, subdivision (p) was a procedural right, not a substantial right. The trial court denied the motion on March 28, 2012. On April 6, 2012, defendant filed a renewed motion to suppress pursuant to section 1538.5, subdivision (i). Judge Linda Condron heard and denied the renewed motion to suppress on April 25, 2012.

*The Trial and Judgment*

Defendant waived his right to a jury trial on May 7, 2012. After a court trial presided over by Judge Chiarello, defendant was found guilty of violating section 311.11, subdivision (a). The trial court suspended imposition of sentence and placed defendant on three years felony probation, subject to various terms and conditions. Defendant appealed.

## DISCUSSION

On appeal, defendant maintains the trial court erred when it declined to assign the motion to suppress to Judge Chiarello. In the alternative, defendant contends his motion to suppress was erroneously denied and two of his probation conditions are unconstitutionally vague.

6

*Right to the Same Judge under Section 1538.5, Subdivision (p)*

Section 1538.5 allows a defendant to move to suppress evidence that was obtained as a result of an unreasonable search or seizure. Subdivision (j) of section 1538.5 specifies that "[i]f the case has been dismissed pursuant to Section 1385, either on the court's own motion or the motion of the people after the special hearing, the people may file a new complaint or seek an indictment after the special hearing, and the ruling at the special hearing shall not be binding in any subsequent proceeding, except as limited by subdivision (p)."

Section 1538.5, subdivision (p), provides "[i]f a defendant's motion to return property or suppress evidence in a felony matter has been granted twice, the people may not file a new complaint or seek an indictment in order to relitigate the motion or relitigate the matter de novo at a special hearing as otherwise provided by subdivision (j), unless the people discover additional evidence relating to the motion that was not reasonably discoverable at the time of the second suppression hearing. Relitigation of the motion shall be heard by the same judge who granted the motion at the first hearing *if the judge is available*." (Italics added.)

Therefore, it appears the plain language of section 1538.5, subdivision (p), gives the trial court discretion to determine whether a judge is available to hear a relitigated motion to suppress. "As with all actions by a trial court within the exercise of its discretion, as long as there exists 'a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be here set aside, even if, as a question of first impression, we might feel inclined to take a different view from that of the court below as to the propriety of the action.' " (*Gonzales v. Nork* (1978) 20 Cal.3d

500, 507.) Accordingly, we review the trial court's conclusion that Judge Chiarello was unavailable to hear the motion to suppress for abuse of discretion.[3]

Fundamentally, our interpretation of section 1538.5, subdivision (p) is rooted with our objective to ascertain and effectuate legislative intent. (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007.) In determining intent we "look first to the words themselves. [Citations.] When the language is clear and unambiguous, there is no need for construction. [Citations.] When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to the achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*Id.* at pp. 1007-1008.)

Here the wording of the statute is susceptible to various interpretations. There are no cases clearly establishing what renders a judge available or unavailable to hear a relitigated motion to suppress under section 1538.5, subdivision (p), and the statute itself does not define the term "available." Defendant argues "available" should be construed to mean a judge is available even when he or she is assigned to a different courthouse or division within the county. The People contend a judge is not "available" within the meaning of the statute if they are, as a matter of practical convenience, unavailable to

_____

[3] During oral argument, defendant reiterated that the district attorney had erroneously argued to Judge Nadler that the previous case had been dismissed pursuant to a section 995 motion so section 1538.5 did not apply, and that Judge Chiarello should not hear the renewed motion because he was not the judge who granted the first motion to suppress. Defendant claims the record indicates Judge Nadler relied on these incorrect statements when making his determination. During the October 2011 hearing, Judge Nadler did state that he did not agree with defendant's "interpretation that it needs to go back to Judge Chiarello by law" and he was "not in agreement with the interpretation by the Defense with who the 1538.5 Judge is." However, whether or not Judge Nadler relied on the district attorney's statements does not change our analysis. During the same hearing, Judge Nadler asserted that Judge Chiarello was not available to him because he had been transferred to another division in Palo Alto.

8

take on the matter.  Because of this ambiguity, we must look to extrinsic sources, including the legislative history of the statute.

Before 1993, prosecutors had a limited ability to relitigate motions to suppress. (*Soil v. Superior Court* (1997) 55 Cal.App.4th 872, 875 (*Soil*).)  "If a motion to suppress was made and granted at the preliminary hearing and the case was dismissed by the magistrate or by the prosecution on its own motion, the prosecution was allowed to refile the case and start all over again.  The ruling at the first motion to suppress was not binding on the refiled case.  If the motion to suppress was granted at the preliminary hearing, but the defendant was nevertheless held to answer for trial, the prosecution was allowed to relitigate the suppression motion de novo at a special hearing in the superior court.  Again, the ruling at the first motion to suppress was not binding at the subsequent hearing.  If the motion to suppress was not made by the defendant at the preliminary hearing, but was made for the first time in the superior court, and was granted, the remedies available to the prosecution were as follows:  (1) if the prosecution had additional evidence not presented at the motion to suppress and could show good cause why such evidence was not presented, the prosecution was allowed to present that evidence and seek to have the prior ruling overturned; and (2) the prosecution could seek appellate review.  The prosecution could not, however, simply refile and relitigate the motion to suppress of a case dismissed as a result of an adverse ruling on a motion to suppress in the superior court.  (*Schlick v. Superior Court* (1992) 4 Cal.4th 310, 316 (*Schlick*).)  The ruling on the motion to suppress in the superior court would be binding on the refiled case.  (*Ibid.*)"  (*Id.* at p. 876.)

In 1993, the Legislature attempted to rectify the anomaly created by *Schlick* by introducing Senate Bill No. 933 (1993-1994 Reg. Sess.), which would allow the prosecution two chances to show that the challenged search was legal, regardless of whether the motion was brought in superior court or in municipal court.  (*Soil*, *supra*, 55

Cal.App.4th at p. 876.) Senate Bill No. 933 did not originally contain language limiting the ability of a prosecutor to refile a case after the grant of two motions to suppress. (*Id.* at p. 878.) It also did not contain language specifying which judge would hear the second or third suppression motions. (*Ibid*.) Therefore, the bill would have given the People the opportunity to have two de novo hearings in front of two different judges. (*Id*. at p. 879.) The bill analysis prepared by the Senate Committee on the Judiciary concluded that as introduced, Senate Bill No. 933 would allow the People to have at least four suppression hearings. The analysis also noted that the California Attorneys for Criminal Justice opposed the bill because it would encourage forum shopping. (*Id*. at p. 878.)

Accordingly, the bill was amended to specify that it should not be construed as a means to forum shop. (*Soil*, *supra*, 55 Cal.App.4th at pp. 878-879.) The amended bill included language, now located in subdivision (p) of section 1538.5, mandating " '[r]elitigation of the motion shall be heard by the same judge who granted the motion at the first hearing if the judge is available.' " (*Soil*, *supra*, at p. 879.) The requirement the same judge hear a relitigated motion to suppress applies to all relitigations, not just to suppression motions that have been heard twice. (*Id.* at p. 880.)

As previously noted, there are no cases specifically defining what makes a judge unavailable to hear a relitigated motion under section 1538.5, subdivision (p). However, courts have concluded that due to the legislative purpose of the statute, the prosecution may not render a judge "unavailable" to hear a renewed motion to suppress by disqualifying him or her under Code of Civil Procedure section 170.6. (*Barnes v. Superior Court* (2002) 96 Cal.App.4th 631, 642; *People v. Superior Court* (*Jimenez*) (2002) 28 Cal.4th 798, 809.) This exception is necessary to effectuate the legislative intent of section 1538.5, subdivision (p), as otherwise the prosecution could steer a motion to suppress away from a particular judge solely because that judge granted the first motion to suppress.

10

The parties do not dispute that Judge Chiarello was a judge in Santa Clara County when defendant filed his renewed motion to suppress, a fact that is sufficiently established in the record.[4]  Additionally, Judge Nadler's only reason for finding Judge Chiarello unavailable was his assignment to a courthouse in Palo Alto.  Therefore, the issue here is whether Judge Nadler's determination that Judge Chiarello was unavailable to hear the motion to suppress was an abuse of his discretion, in violation of section 1538.5, subdivision (p).  In addressing this point, we find it is vital to acknowledge the complex nature of scheduling and assignments in a multi-court judicial system.  Accordingly, we requested the parties file supplemental letter briefs addressing how a presiding judge's discretion to assign cases and manage court calendars in the interest of judicial economy and efficiency functions with a provision like subdivision (p) of section 1538.5.

Defendant and the People agree that a presiding judge has discretion to "distribute the business of the court among the judges, and prescribe the order of business" for the court.  (Gov. Code, § 69508, subd. (a).)  The presiding judge's assignment of business to the court and the judges is "wholly discretionary."  (*Anderson v. Phillips* (1975) 13 Cal.3d 733, 737.)  Additionally, pursuant to California Rules of Court, rule 10.950, courts that have more than three judges may designate criminal and civil divisions.  The

_____

[4] During the hearing before Judge Nadler on October 7, 2011, Judge Nadler stated: "Judge Chiarello is not available to me any longer; he's been transferred to another division, in Palo Alto. [¶] And judges are--mine is a limited jurisdiction Court--I hate to say it--and so departments make themselves available when they're available to me, with the exception of Department 54, who's Judge Del Pozzo, who's assigned full time to my division, or to take [p]reliminary [e]xamination matters.  Everyone else volunteers for that assignment on an availability basis."  During the preliminary examination hearing before Judge Zecher, the People stated that Judge Chiarello "sits in Palo Alto," was therefore in a different courthouse, and had a "separate calendar system."

11

presiding judge retains discretion and authority over civil and criminal case assignments. (Cal. Rules of Court, rule 10.950.)

Defendant argues there is a local superior court rule in Santa Clara County that allows a presiding judge to assign cases to different courthouses.[5] The rule states "[a]ny case may be assigned to another courthouse for discussion, hearing and/or trial at the discretion of the Supervising–Criminal and/or Presiding Judge." (Super. Ct. Santa Clara County, Local Rules Crim. Rule 1.H.) Therefore, defendant insists Judge Chiarello's assignment to a courthouse in Palo Alto did not necessarily render it impossible for Judge Nadler to assign him the motion to suppress. Accordingly, he contends that for the purposes of section 1538.5, subdivision (p), Judge Chiarello was "available" to hear his suppression motion.

The People counter that Judge Nadler correctly concluded that Judge Chiarello was unavailable, arguing *People v. Roberts* (2010) 184 Cal.App.4th 1149 (*Roberts*) demonstrates that a judge's practical unavailability is sufficient. *Roberts* concerned a different statute involving wiretapping orders (§ 629.60), which requires reports be signed by the same judge that issued the authorization. The *Roberts* court concluded the same judge may not always be available and "[r]ather than forgo prompt judicial oversight of the wiretap, a fully informed judge may review the reports." (*Roberts*, *supra*, at p. 1185.) *Roberts* determined that "[c]ontrary to defendants' assertions, we do not believe the requirement the report be signed only by the judge that issued the authorization order plays a central role in the statutory scheme." (*Ibid.*)

Rebutting the People's claims on this point, defendant insists a judge's practical unavailability should not render him unavailable for the purposes of hearing a relitigated

---

[5] The local rules are not a part of the record on appeal. On our own motion, we take judicial notice of the Superior Court of Santa Clara County, Local Rules Criminal Division. (Evid. Code, §§ 452, 459.)

motion to suppress, and *Roberts* is not instructive because the requirement contemplated in that case was not important to the statutory scheme. We agree that contrary to the requirement found in section 629.60, the requirement in section 1538.5 was expressly added to curb forum shopping and is an important part of the statutory scheme. However, what is unclear is whether subdivision (p) of section 1538.5 should be interpreted to mean a judge is "available" to hear a motion to suppress regardless of any administrative hurdles.

Defendant takes the position that a judge is available to hear a motion to suppress even when internal court practices render the assignment difficult or impractical. He insists that *People v. Arbuckle* (1978) 22 Cal.3d 749, 753 (*Arbuckle*) is informative on the subject of judicial availability. In *Arbuckle*, our Supreme Court concluded that when a judge accepts a plea bargain that involves sentencing discretion, it is an implied term that the sentence will be imposed by that judge. (*Id.* at p. 757.) In reaching this decision, the court acknowledged that "in multi-judge courts, a judge hearing criminal cases one month may be assigned to other departments in subsequent months. However[,] a defendant's reasonable expectation of having his sentence imposed, pursuant to [a] bargain and [a] guilty plea, by the judge who took his plea and ordered sentence reports should not be thwarted for mere administrative convenience." (*Id.* at p. 757, fn. 5.)

We disagree with defendant's assertion that *Arbuckle* is informative. In fact, *Arbuckle* contemplates there are times when a court's internal administrative practices may render it impossible or impractical for the judge who accepted a defendant's plea to impose the sentence.[6] *Arbuckle* specifically concluded if the judge who accepted the plea

---

[6] Cases that have followed *Arbuckle* have not determinatively established what accounts to an "impossibility." However, the appellate court in *People v. DeJesus* (1980) 110 Cal.App.3d 413, 419, held that a judge's temporary absence due to a death in the family did not constitute impossibility under *Arbuckle*.

was indisposed due to administrative reasons, the defendant should be given the opportunity to withdraw his plea. (*Arbuckle*, *supra*, 22 Cal.3d at p. 757.)

Like the *Arbuckle* court, we too are faced with a quandary. There may be times when it would be difficult for the judge who heard and granted the first motion to suppress to hear the relitigated motion to suppress due to the complex administrative processes of the court system. However, defendant argues that the requirement of section 1538.5, subdivision (p) is mandatory and must be followed regardless of any practical difficulties. What defendant fails to acknowledge is that contrary to his assertions, section 1538.5, subdivision (p) is not absolute; it includes a caveat: a renewed motion to suppress shall be heard by the same judge only if that judge is *available*.

Defendant insists a presiding judge cannot find a judge unavailable to hear a relitigated motion to suppress due to administrative reasons, because the presiding judge cannot deprive defendants of fundamental or statutory rights even in the interest of efficiency. He contends our Supreme Court determined in *Gonzalez v. Commission on Judicial Performance* (1983) 33 Cal.3d 359, 375 that a judge cannot violate a defendant's rights for the purpose of judicial economy, like to improve a congested court calendar. In *Gonzalez*, a judge improperly disregarded procedures by holding a "half-off sentencing 'bargain day' for persons pleading guilty," an "*en masse* plea bargaining technique" that "sought 'a couple of dollars for the county and a conviction for the state.' " (*Ibid.*) The *Gonzalez* court concluded the judge's mass plea bargain offer contravened the principle of individualized sentencing embodied in the Penal Code, thereby constituting willful judicial misconduct. (*Ibid.*) We agree with the sentiments set forth in *Gonzalez* and with defendant's assertion that a judge cannot sacrifice a defendant's statutory rights in the interests of efficiency.

However, we disagree with defendant that a presiding judge's determination that a judge is unavailable to hear a relitigated motion to suppress due to administrative reasons

14

somehow deprives a defendant of a fundamental or statutory right. As previously discussed, it is clear from the language of section 1538.5, subdivision (p), that while the provision is mandatory, its application is subject to the first judge's availability. Therefore, a presiding judge who determines the first judge is not available and assigns the relitigated motion to suppress to another judge does not, in doing so, deprive a defendant of his statutory rights.

Furthermore, a determination that a judge is unavailable in this scenario does not encourage prosecutorial forum shopping. Unlike the situations confronted by the courts in *Jimenez* and *Barnes*, here the prosecution did not take affirmative steps to divert defendant's relitigated motion to suppress away from a particular court. The People may have initially opposed defendant's request to transfer his suppression hearing to Judge Chiarello, but it was the presiding judge who ultimately determined that Judge Chiarello was not available to hear the motion. We are guided in our interpretation of section 1538.5, subdivision (p) by the express intent of the legislature when enacting the provision. Judge Nadler's decision to assign the motion to suppress to Judge Zecher did not promote judge-shopping by the prosecution.[7] It did not, as defendant argues, eviscerate the legislative intent of the statute.

In coming to this conclusion, we reiterate the presiding judge has discretion to manage the court calendar and assign matters to various divisions and judges across the courts of the county. Therefore, while the language of section 1538.5, subdivision (p),

---

[7] In the context of a defendant's right to a speedy trial, our Supreme Court has determined that "distance and ordinary travel time between two courts in which a defendant is required to appear [does not] constitute 'exceptional circumstances' " establishing good cause warranting delay in a defendant's criminal trial. (*People v. Hajjaj* (2010) 50 Cal.4th 1184, 1203.) Defendant argues that this provides an analogy to the situation presented here, but we disagree that a finding of "exception circumstances" to establish good cause warranting delay in a criminal trial is analogous to a finding that a judge is unavailable to hear a relitigated motion to suppress.

15

requires a relitigated motion to suppress to be heard by the judge who granted the motion in the first case, this requirement is subject to the presiding judge's discretionary determination that the first judge is available. Given our interpretation of the legislative intent behind section 1538.5, subdivision (p), coupled with the presiding judge's inherent discretion to assign matters, Judge Nadler's determination of Judge Chiarello's availability was not an abuse of discretion. It was not arbitrary or capricious, and it did not deprive defendant of his rights under the statute.

*Denial of the Motion to Suppress*

Alternatively, defendant argues that his motion to suppress was erroneously denied by Judge Zecher, who found the encounter between the detectives, defendant, and defendant's father consensual "both in terms of tone and in terms of content."

"Defendant's challenge to the trial court's ruling denying his motion to suppress presents a mixed question of law and fact that is subject to a two-tier standard of review. 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Sardinas* (2009) 170 Cal.App.4th 488, 493.) "In determining whether substantial evidence supports the trial court's findings, '[i]f there is conflicting testimony, we must accept . . . the version of events most favorable to the People, to the extent the record supports them.' " (*People v. Boulter* (2011) 199 Cal.App.4th 761, 767.)

When denying the motion to suppress, Judge Zecher determined that when Susanna answered the door, she felt comfortable enough to "shut the door and retreat into the house to discuss the matter with her husband or whoever it is that she felt she needed to discuss the matter with." Judge Zecher also noted there was a conflict in the facts as to

16

what actually happened when Susanna went into the house, but it was clear defendant later came to the front door and there was no indication that he was forced to do so. Judge Zecher further concluded there was no evidence defendant or his brother were coerced into speaking with the detectives. After reviewing the transcript of the encounter, it was apparent to Judge Zecher that defendant and his father made a "noncoerced decision to allow the detective to take [the] computer tower," and that there was nothing in the record that would suggest coercion by the detectives.

Judge Zecher concluded the officers' statements regarding a search warrant were not coercive in nature because they were a "confirmation of legally what the detectives were going to do." Judge Zecher also considered the statement made by Detective Nunes about kicking in the door, and found defendant was aware of that statement but "while [the statement was] not particularly palatable, it is clear in the interaction between the detectives and [defendant] and his family . . . they were not coercive to the extent that [defendant's] Fourth Amendment rights were violated." Defendant argues that contrary to the magistrate's conclusions, defendant and his family did not voluntarily consent to the search of the home, because their consent was obtained due to coercion and duress.

A police officer can enter a residence without a warrant to conduct a search if consent is voluntarily given. (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 222.) "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." (*Id.* at p. 227.) The prosecution has the burden to establish that consent to search was freely and voluntarily given and not the result of coercion or duress. (*Bumper v. North Carolina* (1968) 391 U.S. 543, 548, 549.)

" ' "An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies

17

the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] 'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.] [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review." ' " (*People v. Ayala* (2000) 23 Cal.4th 225, 255.)

Defendant argues the officers failed to leave immediately when they initially spoke with Susanna, and Detective Nunes improperly wedged herself into the door frame, preventing Susanna from closing the door. Defendant contends this was a display of force by Nunes that would "frighten and scare the homeowner." However, Chubon testified during the preliminary hearing that he did not remember Nunes wedging herself in the door. The trial court is vested with the power to judge the credibility of witnesses and resolve conflicts in testimony. (*People v. James* (1977) 19 Cal.3d 99, 107.) Therefore, the court was entitled to disbelieve the testimony that Nunes prevented Susanna from closing the door in favor of Chubon's testimony that no such event occurred.

Defendant also asserts that Detective Nunes's threat to obtain a search warrant to "kick the door in" was coercive and illegal. In *People v. Ratliff* (1986) 41 Cal.3d 675 (*Ratliff*), our Supreme Court upheld a finding of consent after officers entered a defendant's home, handcuffed him, and threatened to secure a search warrant and break into the defendant's car trunk if he did not consent. (*Id.* at pp. 685-687.) The defendant also claimed the uniformed police officers had drawn their guns. (*Ibid.*) Our Supreme Court concluded "[t]he trial court was . . . entitled to conclude that even if such a 'threat'

18

was made, it merely amounted to a declaration of the officers' legal remedies should defendant refuse to cooperate." (*Id.* at p. 687.)

The situation presented here was much less coercive than the situation in *Ratliff*. As Judge Zecher noted, Susanna, after hearing the alleged threat, felt comfortable enough to close the door to speak with her husband. Additionally, none of the individuals at the house were placed in handcuffs, the officers were not in uniform, and the officers testified they did not believe they had visible weapons. Similar to *Ratliff*, one of the officers mentioned obtaining a search warrant to kick the door in. However, the trial court was entitled to find this was only a declaration of the officers' legal remedies should consent be denied. (*Ratliff*, *supra*, 41 Cal.3d at p. 687.) During the preliminary hearing, defendant himself testified the tone the officers took with him was upbeat.

In sum, substantial evidence supported the trial court's finding of voluntary consent to the search.

*Vague Probation Conditions*

Lastly, defendant argues two of his probation conditions are unconstitutionally vague because they lack an express knowledge requirement: the condition he "shall not . . . possess any pornographic or sexually explicit material" and the condition he "shall not possess or use any data encryption technique program." We agree that without an express knowledge requirement, defendant could unwittingly violate the condition as there are situations in which he may not know he possesses pornographic or sexually explicit material or a data encryption technique program. Therefore, we modify the probation conditions to add a requirement that defendant must *knowingly* possess pornographic or sexually explicit material and must *knowingly* possess or use any data encryption technique program. (*In re Sheena K*. (2007) 40 Cal.4th 875, 890.)

The People do not object to the modification of these probation conditions but urge us to consider the approach adopted by our colleagues at the Third Appellate District

19

in *People v. Patel* (2011) 196 Cal.App.4th 956. In *Patel*, the Third Appellate District considered whether a probation condition forbidding defendant from drinking or possessing alcohol or being in a place where alcohol is the chief item of sale was invalid because the condition lacked an express knowledge requirement. (*Id.* at p. 959.) The court expressed its frustration with the "dismaying regularity" to which it must revisit the issue of a lack of an express scienter requirement in orders of probation. (*Id.* at p. 960.) The court noted that since there exists a substantial uncontradicted body of case law that establishes that a "probationer cannot be punished for presence, possession, association, or other actions absent proof of scienter," it would no longer entertain the issue on appeal. (*Ibid.*) The Third Appellate District then stated from that point forward it would construe all probation conditions proscribing restrictions on presence, possession, association, or other actions with the requirement that the action be undertaken knowingly. (*Id.* at p. 961.)

A number of the courts of appeal have declined to follow the rationale of *Patel*, including the Fourth Appellate District in *People v. Moses* (2011) 199 Cal.App.4th 374, 381 and this court in *People v. Pirali* (2013) 217 Cal.App.4th 1341, where we chose to modify probation conditions to include an express knowledge requirement. "Our Supreme Court faced the issue of the lack of a knowledge requirement in a probation condition and concluded that 'modification to impose an explicit knowledge requirement is necessary to render the condition constitutional.' [Citation.] Until our Supreme Court rules differently, we will follow its lead on this point." (*Id.* at p. 1351.)

### DISPOSITION

The probation condition prohibiting purchase or possession of pornographic or sexually explicit material is modified to state that defendant "shall not knowingly purchase nor possess any pornographic or sexually explicit material, as defined by his probation officer." The probation condition prohibiting possession or use of data

20

encryption technique programs is modified to state that defendant "shall not knowingly possess or use any data encryption technique program." As modified, the judgment is affirmed.

_____
                              Premo, J.

WE CONCUR:


_____
        Rushing, P.J.


_____
        Elia, J.


People v. Rodriguez
H038588

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. C1110340 |
| Trial Judge: | Hon. Vincent J. Chiarello |
| Counsel for Plaintiff/Respondent:<br>The People | Kamala D. Harris<br>Attorney General<br><br>Dane R. Gillette<br>Chief Assistant Attorney General<br><br>Gerald A. Engler<br>Senior Assistant Attorney General<br><br>Laurence K. Sullivan<br>Supervising Deputy Attorney General<br><br>René A. Chacon<br>Supervising Deputy Attorney General |
| Counsel for Defendant/Appellant:<br>Adam Sergio Rodriguez | Under appointment by the Court of Appeal<br>Victoria H. Schultz |

People v. Rodriguez
H038588