[L. A. No. 24479.   In Bank.   June 21, 1957.]

LARRY FRICKER et al., Respondents, v. UDDO & TAORMINA COMPANY (a Partnership), Appellant.

Rimel & Johnston and Jack J. Rimel for Appellant.

Mize, Larsh, Mize & Hubbard, Delbert L. Larsh and Royal E. Hubbard for Respondents.

GIBSON, C. J.—Plaintiffs, claiming that they are the assignees of part of the proceeds of a tomato crop which George Kikuchi had agreed to grow and sell to defendant canning company, seek to recover the amount of a crop order given to them by Kikuchi and accepted by defendant.* Defendant has appealed from an adverse judgment contending that it is not supported by the evidence.

The case was submitted on stipulated facts which may be summarized as follows:

In March 1952 Kikuchi agreed to grow a tomato crop and to sell it to defendant. The contract provided that in the event defendant should advance moneys to Kikuchi for the

---

*As used by the parties, the words "crop order" apparently mean a direction by the grower that the buyer of the crop shall pay to a third party a certain sum from the moneys due to the grower from the buyer.

growing and harvesting of the crop, Kikuchi should not permit any encumbrance to accrue against the crop except advances and crop orders. In April Kikuchi requested plaintiffs to supply soil fumigant for his farm on credit. Plaintiffs, knowing that Kikuchi had no assets except the proceeds which he could expect to receive from the crop, asked defendant if it would guarantee payment for the soil fumigant as it had done the previous year. Defendant refused to guarantee payment but stated that it "would accept a crop order against the 1952 crop returns which would become due from defendant to Kikuchi." Plaintiffs furnished the soil fumigant to Kikuchi and sent the bill to defendant for payment. Kikuchi approved the bill, and, on May 2, 1952, defendant wrote to plaintiffs: "This will confirm that we have accepted a crop order instructing us to pay to you $4,074.91 from the return due George Kikuchi from Tomatoes delivered by him to us during the 1952 season." Plaintiffs knew when they furnished the soil fumigant to Kikuchi that defendant had already charged the sum of $27,000 against Kikuchi's 1952 tomato crop account for moneys advanced.

After sending the letter to plaintiffs, defendant advanced to Kikuchi an additional $53,668. The major portion thereof was paid directly to third persons for purposes related to the growing of the crop. Certain of the advances, made both before and after the date of the letter, consisted of cash paid directly to Kikuchi, and "in the main" were used by him to pay necessary crop production expenses. Kikuchi, having no other income, used some of the cash advances to support himself and his family and some to make installment payments due upon farm machinery that he was purchasing and using full time in the production of the crop. On several occasions tomatoes were delivered to defendant, who credited Kikuchi's account with the amount of the gross proceeds. At no time did the credits for delivered tomatoes exceed the amount of previous advances. The venture proved to be unprofitable in that the total amount credited to Kikuchi was only $77,013, whereas the advances totaled $80,668. It is apparent from the stipulation that, while the gross proceeds were insufficient to cover all of the advances made by defendant to Kikuchi, the receipts were more than adequate to cover plaintiffs' crop order and the amount of the advances made prior thereto. Kikuchi has since been adjudged a bankrupt. The complaint is in the form of a common count for money had and received, and the findings are to the effect that defendant became

indebted to plaintiffs in the amount of $4,074.91 for money received for the use of plaintiffs, that the amount remains due, owing, and unpaid, and that plaintiffs requested and defendant refused payment thereof. The trial court in effect rejected defendant's contention that all of the advances made by defendant have priority over plaintiffs' crop order.

Defendant's letter of May 2 discloses that there was a crop order which instructed defendant to pay plaintiffs $4,074.91 from the return due to Kikuchi from tomatoes delivered by him to defendant during the 1952 season and that defendant accepted the order. ▮ It seems clear that, if the parties had expressly agreed at the time of the acceptance of the crop order that either the order or the advances by defendant should have priority, that agreement would be controlling. (See, e.g., *Garner* v. *Uddo & Taormina Co.*, 137 Cal.App.2d 819, 822 [290 P.2d 967].)

▮ Both the crop order and the acceptance are silent with respect to whether the crop order or the advances subsequently made by defendant should have priority. The crop order is conditioned upon the production of a tomato crop and the existence of a return due to Kikuchi from tomatoes delivered by him to defendant, and the record shows that tomatoes were delivered and that sums were credited to Kikuchi's account, but there is nothing to indicate that the order was conditioned upon the existence of a net balance due to Kikuchi from defendant at the end of the season, and the acceptance neither limits nor enlarges the scope of the crop order in this respect. The situation is not altered by the fact that in other transactions defendant had used a special form which provided that the acceptance of a crop order was subject to all advances made to the grower. Plaintiffs did not know that such a form had been used by defendant and were unaware of its provisions. Nor does the fact that defendant refused plaintiffs' request that defendant guarantee payment of the bill for the soil fumigant show an intention of the parties that advances made by defendant subsequent to the acceptance of the crop order were to have priority over plaintiffs' claims against the returns due from the tomato crop. A determination that plaintiffs' claim against the crop proceeds should have priority over defendant's advances made subsequent to the acceptance of the crop order obviously would not be the same thing as holding that defendant is liable, as a guarantor, beyond the amount of the proceeds which it derived from the crop.

The crop order operated as an assignment to plaintiffs of $4,074.91 from the returns due to Kikuchi from the tomatoes to be delivered to defendant. As a general rule the rights of an assignee, including his rights in a fund to become due to the assignor, cannot be destroyed by payments made by the debtor to the assignor after notice of the assignment. (See e.g., *Jones* v. *Martin*, 41 Cal.2d 23, 27-28 [256 P.2d 905]; *A. Farnell Blair Co.* v. *Hollywod State Bank*, 102 Cal.App. 2d 418, 431 [227 P.2d 529]; 2 Williston on Contracts (rev. ed.) § 433, pp. 1251-1255.) Defendant contends in effect that this rule is not applicable here because, it argues, the advances made by it after the date of the crop order were necessary to the production of the crop, without these advances there would be no crop and nothing for either plaintiffs or defendant, and, for this reason, the subsequent advances should have priority. Decisions in other jurisdictions have adopted the rule that an assignment of moneys to become due under an executory contract is subject to advances which are necessary to enable the assignor to perform his contract, and we have concluded that these cases should be followed here. (*Peden Iron & Steel Co.* v. *McKnight,* 60 Tex. Civ.App. 45 [128 S.W. 156, 159]; *Stansbery* v. *Medo-Land Dairy,* 5 Wn.2d 328 [105 P.2d 86, 91]; see *St. Mary's Bank* v. *Cianchette* (N.D. Maine), 99 F. Supp. 994, 999-1000; 6 C.J.S. 1152.) The opinion in the Peden case shows that there, as in the present case, the consideration for the assignment was necessary to enable the assignor to perform his duties under the principal contract. The decision in *A. Farnell Blair Co.* v. *Hollywood State Bank,* 102 Cal.App.2d 418, 427-431 [227 P.2d 529], appears to have taken a contrary position, holding that priority could be given only to advances which were required by contractual and statutory duty. The opinion, however, did not discuss the question whether advances should have priority on the ground of necessity to enable performance by the assignor, and, as pointed out in *Maguire* v. *Hibernia S. & L. Soc.,* 23 Cal.2d 719, 730 [146 P.2d 673, 151 A.L.R. 1062], cases are not authority for propositions not considered.

The rule that priority must be given to subsequent advances which are necessary to enable the assignor to perform his duties under the contract is obviously an exception to the general rule relating to assignments, and, for this reason, the burden was on defendant to put into evidence the facts required to bring the advances made by it within the

exception. As we have seen, the gross returns of the tomato crop were $77,013, and plaintiffs' crop order was for $4,074.91.

■ Accordingly, the judgment must be affirmed unless the stipulated facts establish as a matter of law that defendant was entitled to a priority for advances amounting to more than $72,938.09, the difference between these two amounts. The record, including a detailed statement of account received in evidence pursuant to the stipulation of facts as defendant's exhibit, does not establish that the advances as to which defendant has priority reach such a figure.

The account shows that certain advances totaling $57,668 were made by defendant for purposes specified in the account. Most of these payments were made directly by defendant to third persons, and it is stipulated that all payments so made were necessary for production of the crop. Other payments listed in the account as having been made for specified purposes, for example, "hauling" paid to Kikuchi by defendant, appear reasonably germane to farm purposes, and plaintiffs do not question the correctness of the listing. Accordingly, we shall assume that these advances for specified purposes were necessary for production of the crop.

The remaining advances, totaling $23,000, were paid to Kikuchi by defendant, and their purpose was unspecified in the account, the items being designated merely as "advance" or "advance (not deposited)."* Of the $23,000 so advanced, $9,000 was paid prior to May 2, 1952, the date of the letter confirming acceptance by defendant of plaintiffs' crop order, and defendant is entitled to priority with respect to this portion of the money advanced for unspecified purposes. ■ Further, it is stipulated that the charges shown in the account as "advances" paid to Kikuchi were "in the main" used by him for necessary crop production expenses, and this language is broad enough, as used here, to mean that at least half of such advances, i.e., $11,500, were necessary for crop production. (*Cf. Floeck* v. *Hoover*, 52 N.M. 193 [195 P.2d 86, 89]; *McGill* v. *Baumgart*, 233 Wis. 86 [288 N.W. 799, 802]; *In re Atran's Estate*, 145 N.Y.S.2d 540, 542.) Conversely, the term "in the main" clearly indicates that a substantial portion of such advances was not necessary to the crop. The fact that there are two separate reasons for giving defendant priority with respect to some of the

---

*The designation "advance (not deposited)" is not explained, but the items so termed were included to make up the stipulated total of $80,668 advanced by defendant.

$23,000 advanced for unspecified purposes does not mean that defendant has established priority to $20,500 ($9,000 plus $11,500) of these advances, because it is entirely possible that all of the $9,000 in such advances made prior to May 2 was necessary for production of the crop and thus was included in the $11,500 of such advances which, by stipulation, was necessary for production. If such were the case, defendant's priority in the unspecified advances of $23,000 would be limited to $11,500. There is no evidence that any larger portion of the advances made for unspecified purposes was actually used for purposes necessary to growing the crop, and, in view of the fact that defendant has the burden of proof on this issue, we cannot properly conclude that defendant has established that any more than $11,500 of such advances was entitled to priority.

It is true that on each occasion when Kikuchi requested advances to be paid directly to himself, defendant was advised by Kikuchi that the money was needed and was to be used to pay various items of crop production expense which defendant deemed essential to the production of the crop. This, however, does not show that the money listed in the account without specification of purpose was actually used by Kikuchi for growing the crop. Moreover, it discloses only the personal opinions of Kikuchi and defendant as to the existence of a necessity. Such opinions, of course, were not binding upon plaintiffs, and proof should have been made of what the expenditures were so that the court could determine the question of necessity.

It should be noted that some of the money advanced for unspecified purposes was used by Kikuchi for living expenses of his family and that some was used to make installment payments due upon farm machinery which he was purchasing. Use of the money for payments on the machinery was probably necessary for production of the crop, but the sums spent for Kikuchi's family cannot properly be treated as having been used for this purpose. There is no evidence or finding as to how much of the money was used for family support, and, for all that appears, use of advances for family purposes may explain defendant's failure to prove that all of the advances made by it were necessary for production of the crop.

It follows that, under the record, defendant has established a priority with respect to only $69,168 of the advances made by it (i.e., $57,668 in advances for specified

purposes plus $11,500, being one-half of the advances made for purposes unspecified in the account). This sum, deducted from the gross returns of the tomato crop, leaves a balance of $7,845, which is more than ample to permit payment from the fund of plaintiffs' crop order for $4,074.91.

The judgment is affirmed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.