Filed 5/18/22 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| COUNTY OF SANTA CLARA,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>    Respondent,<br><br>DOCTORS MEDICAL CENTER OF MODESTO et al.,<br><br>    Real Parties in Interest. | H048486<br>(Santa Clara County<br>Super. Ct. No. 19CV349757)<br><br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed on April 26, 2022, be modified as follows:

1. On page 11, replace the first sentence of the first full paragraph with:

We acknowledge that under our interpretation of the relevant statutes a provider has greater remedies against a private health care service plan than it does against a public entity health care service plan.

There is no change in the judgment.

Dated: _____        _____

GROVER, A.P. J.

_____

LIE, J.

_____

WILSON, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| COUNTY OF SANTA CLARA,<br><br>        Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>        Respondent,<br><br>DOCTORS MEDICAL CENTER OF MODESTO et al.,<br><br>        Real Parties in Interest. | H048486<br>(Santa Clara County<br>Super. Ct. No. 19CV349757) |

Petitioner County of Santa Clara operates a health care service plan, licensed under the Knox-Keene Health Care Service Plan Act. Real parties in interest Doctors Medical Center of Modesto and Doctors Hospital of Manteca, Inc. (collectively, the Hospitals) provided emergency medical services to members of the county's health plan and submitted reimbursement claims to the county. The county reimbursed the Hospitals for only part of the claimed amounts. The Hospitals sued the county for the full amounts of their claims, the operative complaint alleging a single cause of action for breach of an implied-in-fact or implied-in-law contract. The county demurred, asserting it is immune from the Hospitals' suit under the Government Claims Act (Gov. Code, § 810 et seq.).

Respondent court overruled the demurrer, the county petitioned for writ relief here, and we issued an order to show cause. Because the county is immune from common law claims under the Government Claims Act and the Hospitals do not state a

claim for breach of an implied-in-fact contract, we will issue a writ of mandate instructing the trial court to enter a new order sustaining the demurrer without leave to amend.

## I.    TRIAL COURT PROCEEDINGS

According to the Hospitals' operative third amended complaint, the county operates a health care service plan called Valley Health Plan, which is licensed and regulated by the state Department of Managed Health Care (Department) under the Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1340 et seq.; "Knox-Keene Act"). The Hospitals provided emergency medical services to three patients enrolled in the county's health plan. The Hospitals submitted claims to the county for over $144,000, amounting to what they allege is the reasonable value of the emergency medical services provided to those patients. The county reimbursed the Hospitals approximately $28,500 for those services. The Hospitals submitted written administrative appeals to the county for the unpaid sums, which the county denied.

The Hospitals sued the county for reimbursement. The Hospitals initially alleged both tort and implied-in-fact contract causes of action. The trial court sustained the county's demurrer to the Hospitals' second amended complaint. The court denied leave to amend regarding the tort causes of action, concluding that as a public entity the county was immune from those common law claims. (Citing Gov. Code, § 815; unspecified statutory references are to the Government Code.) The trial court granted leave to amend the breach of implied contract cause of action.

The Hospitals allege in the operative third amended complaint's single cause of action that they provided emergency medical services to the county's patients with the expectation of "reasonable and customary payment" from the county; that the county did not "assert that the Patients were not [its] insured[s] or indicate in any way to the [Hospitals] that [it] would not cover the Patients['] medical expenses"; that inaction by the county "gave rise to implied-in-fact agreements between the [Hospitals] and [the

2

county] obligating [the county] to pay for the care and treatment rendered by the [Hospitals] to the Patients at a reasonable and customary rate"; and that the county's ordinances "approved by its Board of Supervisors, as well as the statutes contained within the Knox-Keene Act and regulations of [the Department], give rise to implied-in-law agreements between the [Hospitals] and [the county] obligating [the county] to pay for the care and treatment rendered by the [Hospitals] to the Patients at a reasonable and customary rate." The county allegedly "acknowledged [its] implied contractual obligations to the [Hospitals] by issuing partial payment on such claims. However, [it] failed to fully reimburse the [Hospitals] for the services rendered to the Patients at reasonable and customary rates as required by the Knox-Keene Act."

The county demurred to the operative complaint, arguing there is no private right of action to sue for reimbursement under the Knox-Keene Act; a breach of an implied contract cause of action cannot be asserted against a public entity; and (in supplemental briefing) that the county was immune from the lawsuit by operation of section 815. The demurrer to the third amended complaint was heard by a different judge, who after the hearing issued a lengthy order overruling the demurrer. The order states that the county cannot "rely on a public policy regarding contracts as to public entities so that it can be exempted from" the Knox-Keene Act. The trial court reasoned that the "public policy to promote the delivery and the quality of health and medical care to the people of the State of California outweighs the policy to limit common law, or implied contract claims against public entities." On the issue of immunity, the order states neither the county's "supplemental brief nor its supplemental reply brief persuade the Court that [the county] is immune from the quantum meruit cause of action contemplated by statute and the [Department]. Here, whether fashioned as a cause of action for breach of an implied in fact contract or one for quantum meruit, [the Hospitals] state facts sufficient to constitute a cause of action."

3

The county petitioned for writ relief in this court. A different panel issued an order to show cause, invited further briefing, and granted the California State Association of Counties' request to file an amicus curiae letter.

## II. DISCUSSION

We review a trial court's order overruling a demurrer de novo. (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182.) We assume the truth of factual allegations in the complaint, and determine whether a valid cause of action is stated under any legal theory. (*Mayron v. Google LLC* (2020) 54 Cal.App.5th 566, 571.) "Although extraordinary relief ordinarily is not available at the pleading stage, mandamus is available when ... extraordinary relief may prevent a needless and expensive trial and reversal." (*Spielholz v. Superior Court* (2001) 86 Cal.App.4th 1366, 1370, fn. 4.)

### A. THE KNOX-KEENE ACT

The county (through its Valley Health Plan) and the Hospitals are health care service plans licensed under the Knox-Keene Act, a "comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care." (*Bell v. Blue Cross of California* (2005) 131 Cal.App.4th 211, 215 (*Bell*).) The county has no contract for the provision of medical services with either of the Hospitals, making them noncontracting providers. When, as here, a noncontracting health care service plan provides emergency services to another plan's enrollee, the enrollee's plan "shall reimburse providers for emergency services and care provided to its enrollees, until the care results in stabilization of the enrollee." (Health & Saf. Code, § 1371.4, subd. (b).)

Regulations implementing the Knox-Keene Act define " 'Reimbursement of a Claim' " for noncontracting providers as: "the payment of the reasonable and customary value for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the

4

general geographic area in which the services were rendered; (v) other aspects of the economics of the medical provider's practice that are relevant; and (vi) any unusual circumstances in the case." (Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)(B).)

Each health care service plan must have a dispute resolution mechanism through which noncontracting providers can seek resolution of billing and claims disputes. (Health & Saf. Code, § 1367, subd. (h)(2).) The Department has promulgated regulations governing that dispute resolution process. (See Cal. Code Regs., tit. 28, § 1300.71.38.) The Department is charged with periodically reviewing provider dispute resolution mechanisms and also may do so, "when appropriate, through the investigation of complaints of unfair provider dispute resolution mechanism(s)." (Cal. Code Regs., tit. 28, § 1300.71.38, subd. (m)(1).)

Violations of the Knox-Keene Act and the implementing regulations are subject to enforcement actions. (Health & Saf. Code, § 1371.39, subds. (a), (d); Cal. Code Regs., tit. 28, § 1300.71.38, subd. (m)(3).) Among other penalties for violating the statute and regulations, the Department's director can: issue a cease and desist order (Health & Saf. Code, § 1391); suspend or revoke a health care service plan's license (Health & Saf. Code, § 1386, subd. (a)); impose civil penalties of up to $2,500 per violation (Health & Saf. Code, § 1387, subd. (a)); and seek injunctive relief in a civil action (Health & Saf. Code, § 1392, subd. (a)(1)). Willful violations can be punished through criminal prosecution. (Health & Saf. Code, § 1390.) Health and Safety Code section 1394 states that the "civil, criminal, and administrative remedies available to the director pursuant to this article are not exclusive, and may be sought and employed in any combination deemed advisable by the director to enforce the provisions of this chapter."

When all health care service plans involved in a dispute are *private* entities, a noncontracting provider can bring an action seeking reimbursement for the reasonable value of emergency services under the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) or on a quantum meruit theory. (*Bell*, *supra*, 131 Cal.App.4th at p. 216.)

5

## B. IMPLIED-IN-LAW CONTRACT CLAIM

The county argues it is immune from any implied-in-law contract cause of action by operation of the Government Claims Act. There is "no common law tort liability for public entities in California; instead, such liability must be based on statute." (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897 (*Guzman*).) Section 815 sets out the general rule regarding immunity: "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." The intent of the Government Claims Act is "not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." (*Williams v. Horvath* (1976) 16 Cal.3d 834, 838; accord *Guzman*, at p. 897.) The Government Claims Act includes exceptions to immunity, including, as relevant to the Hospitals' argument here, section 815.6: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

### 1. Government Code Section 815 Bars a Quantum Meruit Action

Section 815 immunizes public entities from liability on common law theories. Quantum meruit is an equitable doctrine under which the " 'law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.' " (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 458; *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 88, fn. 11.) A court faced with a similar question concluded that a quantum meruit action against a public entity is barred by section 815. (*Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289, 314 (*Sheppard*) [noting that generally " ' "a private party cannot sue a public entity on an implied-in-law or quasi-

6

contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the need to protect and limit a public entity's contractual obligations" ' "].)  Consistent with that authority, we conclude that the Hospitals cannot state a claim based solely on the common law doctrine of quantum meruit.

The Hospitals cite cases involving reimbursement disputes between private health care service plans, contending those cases demonstrate the viability of their cause of action.  (Citing *Bell*, *supra*, 131 Cal.App.4th 211; *Children's Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, 1270 (*Children's Hospital*).)  But because no public entity was involved in those cases, those courts had no occasion to decide the immunity question presented here.  (*Fricker v. Uddo & Taormina Co.* (1957) 48 Cal.2d 696, 701 ["[C]ases are not authority for propositions not considered."].)  And the bases for the cause of action in *Bell* were the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) and quantum meruit (*Bell*, *supra*, 131 Cal.App.4th at pp. 214, 216), theories of relief which cannot be asserted against a public entity.  (*People for Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Bd.* (2005) 125 Cal.App.4th 871, 878–879 [Unfair Competition Law]; *Sheppard*, *supra*, 191 Cal.App.4th 289, 314 [quantum meruit].)

### 2.  The Mandatory Duty Exception in Gov. Code Section 815.6 Does Not Apply

The Hospitals argue that their suit is authorized by section 815.6, an exception to immunity which applies where a public entity fails to discharge a "mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury."  "[A]pplication of section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken."  (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498.)  And it is not enough that the "public entity or officer have been under an obligation to perform a

7

function if the function itself involves the exercise of discretion." (*Ibid.*) Whether a statute imposes a mandatory duty is a question of law (*id.* at p. 499), which we review de novo.

The Hospitals argue that Health & Safety Code section 1371.4, subdivision (b) imposes a mandatory duty on the county that triggers the section 815.6 exception to immunity. Under that subdivision, the county "shall reimburse [the Hospitals] for emergency services and care provided to its enrollees, until the care results in stabilization of the enrollee." (Health & Saf. Code, § 1371.4, subd. (b).) The implementing regulations state that the reimbursement must be for the "reasonable and customary value" of the health care services performed. (Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)(B).) Though the duty to reimburse is mandatory under Health & Safety Code section 1371.4, the county has discretion in the *amount* of that reimbursement since it is vested with the discretion to determine the reasonable and customary value of the services. Because the county is vested with discretion in determining the value of the reimbursement to be paid under Health & Safety Code section 1371.4, that section does not create a purely mandatory duty. Section 815.6 therefore does not authorize the Hospitals' implied-in-law contract cause of action.

### 3. No Other Statute Authorizes an Action for Damages

Though section 815 describes broad immunity, it also contains the limiting phrase, "[e]xcept as otherwise provided by statute." The Supreme Court has explained that "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care." (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183 (*Eastburn*).) We interpret the phrase "specific statute declaring them to be liable" as requiring that a statute include a private right of action authorizing a suit against a public entity. We invited supplemental briefing regarding whether Health and Safety Code section 1371.4 or any other section of

8

the Knox-Keene Act authorizes a private right of action that would support the Hospitals' reimbursement suit.

Not all violations of a statute give rise to a private right of action. (*Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596–597 (*Lu*).) "[W]hether a party has a right to sue depends on whether the Legislature has 'manifested an intent to create such a private cause of action' under the statute." (*Ibid.*) That intent can be shown through " ' "clear, understandable, unmistakable terms" ' " in the text of the statute itself that "strongly and directly indicate that the Legislature intended to create a private cause of action." (*Id.* at p. 597; e.g., Health & Saf. Code, § 1285, subd. (c) ["Any person who is detained in a health facility solely for the nonpayment of a bill has a cause of action against the health facility for the detention."], Veh. Code, § 17001 ["A public entity is liable for death or injury to person or property proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment."].) Even absent such clear statutory language, legislative history can reveal an intent to impose liability. (*Lu*, at p. 597.)

The Hospitals acknowledge that "there is no express[] language providing a private right of action under the Knox-Keene Act." Having reviewed the Knox-Keene Act, we agree that nothing in that statutory scheme provides a private right of action that would support the Hospitals' reimbursement action against the county. Though under Health and Safety Code section 1371.4 the county has an obligation to reimburse the Hospitals for the care provided to the county's enrollees, nothing in that section demonstrates a legislative intent to allow the Hospitals to sue directly under that statute to enforce the obligation. Unlike statutes that provide a private right of action, Health and Safety Code section 1371.4 does not state that the health care service plan entitled to reimbursement "has a cause or action," or that the debtor health care service plan "is

9

liable" for that reimbursement. (Compare Health & Saf. Code, § 1371.4 with Health & Saf. Code, § 1285, subd. (c), Veh. Code, § 17001.)

The Hospitals argue that despite the lack of express language creating a private right of action under the Knox-Keene Act, "there is clear legislative intent providing for such a right, as further supported by established case[ ]law." But the Hospitals point to nothing in the legislative history of the Knox-Keene Act evincing an intent to allow private rights of action. They cite Health & Safety Code section 1399.5, which states in relevant part that the Knox-Keene Act "shall be applicable to any private or public entity or political subdivision which, in return for a prepaid or periodic charge paid by or on behalf of a subscriber or enrollee, provides, administers or otherwise arranges for the provision of health care services." But that section merely discusses the general applicability of the Knox-Keene Act, and does not show clear legislative intent to allow a private right of action in this context.

According to the Hospitals, "California Courts have repeatedly held that private rights of action are permitted to challenge violations of the Knox-Keene Act under the UCL and common law." That contention reflects a misunderstanding of the private right of action concept. A statute which creates a private right of action is one that can be sued on *directly*, not through the common law or another statute. The cases the Hospitals cite, including *Bell*, were brought on unfair competition law and quantum meruit theories (*Bell*, *supra*, 131 Cal.App.4th at p. 216), and did not assert a private right of action under Health and Safety Code section 1371.4. Because the Hospitals cannot point to a "specific statute declaring [the county] to be liable" (*Eastburn*, *supra*, 31 Cal.4th at p. 1183), section 815 applies to bar the Hospitals' implied-in-law contract action.

The Hospitals assert that finding the county immune from the Hospitals' implied-in-law contract action will allow the county "to unilaterally underpay the patient accounts at issue" without any recourse to the Hospitals. They argue in their supplemental brief that "there is no remedy available under the Knox-Keene Act or any statutory framework

10

that would ensure that non-contracted provider health care service plans are reimbursed for the reasonable and customary value of the services rendered to public entity health care service plan enrollees."  But the Knox-Keene Act contains enforcement alternatives to litigation.  Noncontracting provider disputes are processed through a dispute resolution process governed by statute and regulation.  (Health & Saf. Code, § 1367, subd. (h)(2); Cal. Code Regs., tit. 28, § 1300.71.38.)  The Department has authority to review provider dispute resolution mechanisms, including "through the investigation of complaints of unfair provider dispute resolution mechanism(s)."  (Cal. Code Regs., tit. 28, § 1300.71.38, subd. (m)(1).)  Providers may report allegedly unfair payment patterns to the Department, which "shall review complaints" and "may conduct an audit or an enforcement action."  (Health & Saf. Code, § 1371.39, subds. (a), (d).)  The Department director also has broad regulatory authority to investigate health care service plans and to impose financial or other penalties for violations of the Knox-Keene Act (see Health & Saf. Code, §§ 1386–1392), including penalties as severe as criminal prosecution and revocation of a health care service plan's license.  (Health & Saf. Code, §§ 1386, subd. (a), 1390.)  We recognize that financial penalties to be paid to the Department may deter violations but do not directly reimburse service providers.  Nonetheless, although section 815 forecloses the Hospitals' chosen means of enforcement, they are not without *any* recourse to address their dispute with the county.

We acknowledge that under our interpretation of the relevant statutes a health care service plan has greater remedies against a private health care service plan than it does against a public entity health care service plan.  (E.g., *Bell*, *supra*, 131 Cal.App.4th 211.)  But that result is driven by the Legislature broadly immunizing public entities from common law claims and electing not to abrogate that immunity in the context presented here.  We have no authority to rewrite the statutes we are called upon to interpret.  (*People v. Statum* (2002) 28 Cal.4th 682, 692.)

11

#### 4. The Trial Court's Constitutional Concerns Are Unfounded

The trial court's order expressed the view that the public policy argument the county proffered would "ultimately result in acts that are both unconstitutional [citations] and against the stated Legislative purposes and the underlying policies of the Knox-Keene Act." The Hospitals embrace the trial court's constitutional concerns, which appear to derive from a statement in *Bell* rejecting the notion that a plan was "free to reimburse emergency care providers at whatever rate it unilaterally and arbitrarily selects" because under that interpretation "emergency care providers could be reimbursed at a confiscatory rate that, aside from being unconscionable, would be unconstitutional." (*Bell*, *supra*, 131 Cal.App.4th at p. 220; citing *Cunningham v. Superior Court* (1986) 177 Cal.App.3d 336, 348 [requiring private attorney to represent indigent client and provide free legal services violated equal protection].)

In contrast to the issues raised in *Cunningham* and *Bell*, the county does not contest its obligation to reimburse the Hospitals for the reasonable and customary value of the services provided to the county's enrollees. The issue here is what remedies may be pursued against the county when the reasonableness of the reimbursement is disputed. As we have discussed, the Knox-Keene Act and its implementing regulations provide alternative mechanisms to challenge the amount of emergency medical services reimbursements.

### C. IMPLIED-IN-FACT CONTRACT CLAIM

The operative complaint alleges the existence of an implied-in-fact contract with the county. Because section 815 does not "affect[] liability based on contract" (Gov. Code, § 814), the county's immunity from common law and tort claims does not necessarily preclude the Hospitals from maintaining an action for breach of an implied-in-fact contract. Whether an action sounds in contract or tort for purposes of governmental immunity " 'depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. If based on breach of promise it is contractual; if

12

based on breach of a noncontractual duty it is tortious.' " (*Roe v. State of California* (2001) 94 Cal.App.4th 64, 69.)

The operative complaint contains a single cause of action for breach of an implied contract; within that cause of action are allegations based on an implied-in-law contract and an implied-in-fact contract. But ultimately the nature of the right sued upon is the breach of a *noncontractual* duty, described in the complaint as the county's obligation under ordinances "approved by its Board of Supervisors, as well as the statutes contained within the Knox-Keene Act and regulations of [the Department] ... to pay for the care and treatment rendered by the Plaintiffs to the Patients at a reasonable and customary rate." That the operative complaint uses the phrase "reasonable and customary" rate, taken from the regulations implementing the Knox-Keene Act, indicates that the right sued upon derives from statute rather than contract. (See Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)(B).) Because the Hospitals' suit is based on an alleged breach of statutory duty rather than an alleged breach of promise, the nature of the Hospitals' action is tortious and the county is immune from suit under section 815.[1]

*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418 (*San Mateo*) is instructive and supports our reasoning. The plaintiffs in *San Mateo* were school districts that invested money in a pooled retirement fund operated by the defendant County of San Mateo. The fund invested substantial capital with Lehman Brothers Holdings, Inc. (Lehman Brothers), losing over $150 million when the company went bankrupt. The plaintiffs sued the county following the collapse of Lehman Brothers, alleging statutory violations of prudent investor standards as well as breach of contract. (*Id.* at p. 424.) On appeal from a sustained demurrer, the

---

[1] That the Hospitals allege a breach of statutory duty factually distinguishes this case from *Children's Hospital*, *supra*, 226 Cal.App.4th at pp. 1268–1270, where the jury found an implied-in-fact contract between a hospital and a health care service plan to fill a gap for the time period separating the entities' two written contracts which set reimbursement rates.

13

*San Mateo* court determined that the statutory claims were barred by section 815. (*Id.* at pp. 432, 434.) The court also concluded the plaintiffs did not state a cause of action for breach of contract because the "nature of the right sued upon in the [breach of contract] cause of action is not for breach of a promise, but rather for acts or omissions that constitute violations of independent noncontractual duties" set forth in statute. (*Id.* at p. 440.) The court reasoned that the "gravamen of plaintiffs' claim is the failure of defendants to manage the [investment fund] competently, in accordance with investment policies and statutory requirements, not breach of any separate or additional contractual obligations." (*Ibid.*)

The Hospitals cite *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171 (*Retired Employees*), which determined that "a county may be bound by an implied contract under California law if there is no legislative prohibition against such arrangements, such as a statute or ordinance." (*Id.* at p. 1176.) But the only relevant conduct the Hospitals point to here is the issuance of "partial payment" by county employees in response to the Hospitals' claims. The administrative actions of a county employee do not themselves create contractual liability on the part of the *county*, whose contracting authority originates with its Board of Supervisors. (Santa Clara County Charter, art. III, § 300 ["The county may exercise its powers only through the Board of Supervisors or officers acting under its authority or of law or of this Charter."][2]; see *Dones v. Life Insurance Company of North America* (2020) 55 Cal.App.5th 665, 693 [distinguishing *Retired Employees*; "Conduct by a County employee such as setting up payroll deductions and issuing confirmations of open

___

[2] Both parties cite this section of the Santa Clara County Charter in their supplemental brief, but neither requested judicial notice. We take judicial notice of the Santa Clara County Charter on our own motion. (Evid. Code, §§ 452, subd. (b), 459, subd. (c), 455, subd. (a).)

14

enrollment benefit elections cannot operate to create an implied contract for provision of benefits in a manner contrary to legislative constraints."].)

The Hospitals argue that the county's charter provision restricting to the Board of Supervisors the authority to act on behalf of the county cannot be used to "abridge its statutory liability" under the Knox-Keene Act. But the county does not dispute its obligation under the Knox-Keene Act to reimburse the Hospitals for the reasonable and customary value of the services provided to the county's enrollees. Indeed, the county has a local ordinance authorizing "Valley Health Plan payment[s] to providers for medical services."[3] The cited charter provision is a generally applicable section that was not designed to evade statutory liability. That fact distinguishes this case from those relied on by the Hospitals, such as *Societa Per Azioni De Navigazione Italia v. City of Los Angeles* (1982) 31 Cal.3d 446, where the City of Los Angeles attempted to use a local enactment to shield itself from respondeat superior liability. (See *id.* at p. 463 ["To the extent that the tariff/ordinance purports to exculpate the City from respondeat superior liability for the torts of its pilot-employees, it is in direct conflict with general state law."].)

## D. LEAVE TO AMEND

We requested supplemental briefing about whether leave to amend should be granted if the operative complaint fails to state a cause of action. Leave to amend would be appropriate if there is a reasonable possibility an amendment would cure the defect that caused the demurrer to be sustained. (*Smith v. BP Lubricants USA Inc.* (2021) 64 Cal.App.5th 138, 145.)

Based on our conclusion that the nature of the Hospitals' action against the county is tortious rather than contractual, government immunity applies. The Hospitals have not identified any statute that would abrogate the immunity. Nor have they identified any

---

[3] We take judicial notice of this ordinance as a matter properly noticed by the trial court. (Evid. Code, § 459.)

15

conduct by the county's Board of Supervisors that might support a breach of implied contract cause of action. As the Hospitals have not demonstrated a reasonable possibility of successfully amending their complaint, they are not entitled to that opportunity.

## III.    DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its September 3, 2020 order overruling petitioner County of Santa Clara's demurrer and to enter a new order sustaining the demurrer without leave to amend. Costs in this original proceeding are awarded to petitioner. (Cal. Rules of Court, rule 8.493(a)(2).) Upon issuance of the remittitur, the temporary stay order is vacated.

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Lie, J.

_____

Wilson, J.

**H048486** - *County of Santa Clara v Superior Court*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 19CV349757 |
| Trial Judge: | Hon. Maureen A. Folan |
| Petitioner COUNTY OF SANTA CLARA | James R. Williams, County Counsel<br>Douglas  M. Press, Assistant County Counsel<br>Melissa R. Kiniyalocts, Lead County Counsel<br>Susan P. Greenberg, Deputy County Counsel<br>David P. McDonough, Deputy County Counsel<br>Office of the County Counsel<br>County of Santa Clara |
| Real Parties in Interest DOCTORS MEDICAL CENTER OF MODESTO, INC. and DOCTORS HOSPITAL OF MANTECA, INC. | Albert Edward Stumpp<br>Mikaela Grace Cox<br>Everett Casey Mitchnick<br>Faatima Seedat<br>Helton Law Group |
| Amicus Curiae for CALIFORNIA STATE ASSOCIATION OF COUNTIES | Aurelia M. Razo, Sen. Deputy County Counsel<br>County of San Diego |